# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS

PATRICK QUINN, IRENE ROBINSON,
ANTWAIN MILLER, MARC KAPLAN,
CHRISTOPHER BALL, DANIEL
MORALES-DOYLE, and JITU BROWN


       Plaintiffs,


         v.


BOARD OF EDUCATION OF THE CITY
OF CHICAGO; JAMES MEEKS, STEVEN
GILFORD, MELINDA LABARRE, CURT
BRADSHAW, LULA FORD, CRAIG
LINDVAHL, ELIGIO CERDA PIMENTEL,
CESILIE PRICE, and JOHN SANDERS,
members of the ILLINOIS STATE BOARD
OF EDUCATION, in their official capacities,
and STATE OF ILLINOIS


       Defendants.

Case No. 2016-cv- 9514

Judge Elaine E. Bucklo

Magistrate Judge Sheila Finnegan

## STATE DEFENDANTS' MEMORANDUM OF LAW
## IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFFS' COMPLAINT AND
## IN RESPONSE TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................. 1

BACKGROUND .................................................................................................................. 2

    A. The Election Procedures for the Chicago Board of Education ................................. 2

    B. Plaintiffs' Allegations ........................................................................................... 3

ARGUMENT ...................................................................................................................... 4

  I.  Plaintiffs' Complaint Should Be Dismissed. ........................................................ 4

    A. Plaintiffs' Claims Should Be Dismissed Because Section 34-3 of the
       School Code is Valid and Constitutional. ............................................................. 5

       1.  Count I fails to state a claim under the Equal Protection Clause and the
            First Amendment because Section 34-3 of the School Code does not deny
            Plaintiffs the equal right to vote and participate in the political process. ............... 5

       2.  Count II fails to state a claim because Section 34-3 of the School Code
            does not violate Plaintiffs' rights under the Due Process and
            Equal Protection Clauses. ................................................................................ 12

       3.  Count III fails to state a claim because Section 34-3 of the School Code
            does not violate the Voting Rights Act. ............................................................. 14

       4.  Count IV fails to state a claim under the Fourteenth and Fifteenth
            Amendments or Title VI of the Civil Rights Act because Section 34-3 of the
            School Code does not deny or abridge the right of minority race Plaintiffs to
            vote on account of race or color or discriminate on the basis of race ................... 15

    B. Plaintiffs' Claims against the ISBE Defendants Should Be Dismissed because
       They Are Not the Proper Defendants. ................................................................... 16

    C. Alternately, this Court Should Abstain from Hearing this Case. ............................ 19

       1.  This Court should stay or dismiss the Complaint under
            *Colorado River* abstention. ........................................................................... 19

       2.  This Court should stay or dismiss the Complaint under the
            *Wilton-Brillhart* doctrine. ............................................................................ 23

  II.  Plaintiffs' Motion for a Preliminary Injunction Should Be Denied. ........................ 25

    A. Plaintiffs Have Little Chance of Success on the Merits of Their Claims. ................. 26

    B. Plaintiffs Have Not Demonstrated Irreparable Harm to Warrant a
       Preliminary Injunction. ...................................................................................... 27

    C. The Harm to Defendants and the Public if an Injunction Issues Outweighs
       Any Interim Harm to Plaintiffs Absent an Injunction. ............................................ 28

    D. Plaintiffs' Request to Advance the Trial on the Merits under Rule 65(a)(2)
       Should Also Be Denied. ..................................................................................... 29

CONCLUSION .................................................................................................................. 29

# TABLE OF AUTHORITIES

**Cases**

African–American Citizens for Change v. St. Louis Bd. of Police Comm'r,
24 F.3d 1052 (8th Cir.1994) ........................................................ 17

African–American Legal Defense Fund, Inc. v. New York,
8 F. Supp. 2d 330 (S.D.N.Y.1998) ................................................ 17

African–American Voting Rights Legal Defense Fund, Inc. v. Missouri,
133 F.3d 921 (8th Cir.1998) ......................................................... 18

African–American Voting Rights Legal Defense Fund, Inc. v. Missouri,
994 F. Supp. 1105 (E.D. Mo.1997) ............................................... 17

Alcan Aluminium Ltd. v. Dep't of Revenue of State of Or., 724 F.2d 1294 (7th Cir. 1984) ........ 22

Alexander v. Rush N. Shore Med. Ctr., 101 F.3d 487 (7th Cir. 1996)........................................ 20

Alexander v. Sandoval, 532 U.S. 275 (2001) ................................... 19

Already, LLC v. Nike, Inc., --- U.S. ---, 133 S. Ct. 721 (2013)................................. 8

American Assoc. of People with Disabilities v. Shelley,
324 F.Supp.2d 1120 (C.D. Cal. 2004) .......................................... 11

Ashcroft v. Iqbal, 556 U.S. 662 (2009). ........................................... 5

Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007) .......................... 5

Boucher v. Sch. Bd. of Sch. Dist. of Greenfield, 134 F.3d 821 (7th Cir. 1998) ............... 31, 33, 35

Brillhart v. Excess Ins. Co. of Am., 316 U.S. 491 (1942) ...................... 29

Carlson v. Wiggins, 675 F.3d 1134 (8th Cir. 2012)................................. 11, 14

Chicago United Indus. v. City of Chicago, 445 F.3d 940 (7th Cir. 2006) ........................... 32

Children's Healthcare is a Legal Duty, Inc. v. Deters, 92 F.3d 1412 (6th Cir. 1996) ............... 21

Chisom v. Roemer, 501 U.S. 380 (1991) ............................................. 17

Clark v. Lacy, 376 F.3d 682 (7th Cir. 2004)......................................... 24

Colorado River Water Conservation Dist. v. United States, 424 U.S. 800 (1976)................ 23, 26

Cronin v. Lindberg, 66 Ill. 2d 47 (1976).............................................. 6

Dillard v. Crenshaw County, 831 F.2d 246 (11th Cir.1987) ..................... 17

Doe on Behalf of Doe v. St. Joseph's Hosp. of Fort Wayne, 788 F.2d 411 (7th Cir. 1986).......... 20

East St. Louis Fed'n of Teachers, Local 1220 v. East St. Louis Sch. Dist.
No. 189 Fin. Oversight Panel, 178 Ill. 2d 399 (1997) ...................... 6

Envision Healthcare, Inc. v. PreferredOne Ins. Co., 604 F.3d 983 (7th Cir. 2010)............... 29, 31

Ex parte Young, 209 U.S. 123 (1908)................................................ 20

Fenje v. Feld, No. 01 C 9684, 2002 WL 1160158 (N.D. Ill. May 29, 2002) ............... 34

Fort Smith Light Co. v. Paving Dist., 274 U.S. 387 (1927)....................... 7

Friends of Eudora Pub. Sch. Dist. of Chicot Cty., Ark. v. Beebe, No. 5:06CV0044,
2008 WL 828360 (E.D. Ark. Mar. 25, 2008) ............................... 17

Fumarolo v. Chi. Bd. of Educ., 142 Ill. 2d 54, 62-63 (1990)....................... 8, 12, 14, 15

Graham v. Med. Mut. of Ohio, 130 F.3d 293 (7th Cir. 1997)....................... 32

Green v. City of Tucson, 340 F.3d 891 (9th Cir. 2003) ............................ 11, 14

*Harvey v. Brewer,* 605 F.3d 1067 (9th Cir. 2010) ........................................................ 11

*Hawkins v. Johanns,* 88 F. Supp. 2d 1027 (D. Neb. 2000) ........................................... 14

*Hearne v. Board of Ed. of City of Chicago,* 185 F.3d 770 (7th Cir. 1999) ........................ 7, 13, 19

*Hightower v. Searcy,* 455 U.S. 984 (1982) .................................................................. 17, 18

*Holley v. City of Roanoke, Alabama,* 162 F. Supp. 2d 1335 (M.D. Ala. 2001) ................... 17

*Holt Civic Club v. City of Tuscaloosa,* 439 U.S. 60 (1978) ............................................... 7

*Hoogasian v. Reg'l Transp. Auth.,* 58 Ill. 2d 117 (1974) ................................................ 16

*Hope Clinic for Women, Ltd. v. Flores,* 2013 IL 112673, 991 N.E.2d 745 (2013) ............... 25

*Hunt v. Cromartie,* 526 U.S. 541, 546 (1999) .............................................................. 13

*Hunziker v. German-Am. State Bank,* 697 F. Supp. 1007 (N.D. Ill. 1988) ..................... 25, 27

*Hunziker v. German-Am. State Bank,* 908 F.2d 975 (7th Cir. 1990) .............................. 25

*Huon v. Johnson & Bell, Ltd.,* 657 F.3d 641 (7th Cir. 2011) ..................................... 27, 30

*Ill. League of Advocates for the Developmentally Disabled v. Quinn,*
    No. 13 C 1300, 2013 WL 5548929, (N.D. Ill. Oct. 8, 2013) ................................... 20, 21

*Illinois Press Ass'n v. Ryan,* 743 N.E.2d 568 (2001) ................................................... 23

*Interstate Material Corp. v. City of Chicago,* 847 F.3d 1285 (7th Cir. 1988) ................... 28

*Ironshore Indem., Inc. v. Synergy Law Grp., LLC,* 926 F. Supp. 2d 1005 (N.D. Ill. 2013) ......... 30

*Jackson v. Ogilvie,* 426 F. 2d 1333 (7th Cir. 1970) ..................................................... 33

*Jacobson v. Dep't of Pub. Aid,* 171 Ill. 2d 314 (1996) ................................................. 12

*Johnson v. Bredesen,* 624 F.3d.742 (6th Cir. 2010) ...................................................... 10

*Judge v. Quinn,* 612 F.3d 537 (7th Cir. 2010) .......................................................... 31, 33

*Kadrmas v. Dickinson Public Schools,* 487 U.S. 450 (1988) ........................................... 7

*LaDuke v. Burlington N. R.R. Co.,* 879 F.2d 1156 (7th Cir. 1989) ............................ 26, 27

*Latham v. Bd. of Educ. of City of Chicago,* 31 Ill. 2d 178 (1964) ........................... passim

*Lawson Prods., Inc. v. Avnet, Inc.,* 782 F.2d 1429 (7th Cir. 1986) ............................... 33

*Mazurek v. Armstrong,* 520 U.S. 968 (1997) ............................................................... 31

*McCauley v. City of Chicago,* 671 F.3d 611 (7th Cir. 2011) ............................................ 5

*McQueen v. City of Chicago,* No. 09 C 2048, 2014 WL 1715439 (N.D. Ill. Apr. 30, 2014) ....... 36

*Med. Assur. Co. v. Hellman,* 610 F.3d 371 (7th Cir. 2010) .......................................... 30

*Medlock v. Trustees of Ind. Univ.,* 683 F.3d 880 (7th Cir. 2012) .................................... 8

*Mich. v. U.S. Army Corps of Eng'g,* 667 F.3d 765 (7th Cir. 2011) ............................... 35

*Miller v. Phelan,* 845 F. Supp. 1201 (N.D. Ill. 1993) .................................................... 20

*Mixon v. State of Ohio,* 193 F.3d 389 (6th Cir. 1999) ........................................... passim

*Moore v. Detroit School Reform Bd.,* 293 F.3d 352 (6th Cir. 2002) ......................... passim

*Nationwide Ins. v. Zavalis,* 52 F.3d 689 (7th Cir.1995) ................................................ 30

*Nevitt v. Langfelder,* 157 Ill.2d 116, 623 N.E.2d 281 (1993) ........................................ 25

*One Wisconsin Institute v. Nichol,* 155 F.Supp.3d 898 (W.D. Wis. 2015) ......................... 11

*People v. Deatherage,* 401 Ill. 25 (1948) ...................................................................... 7

iii

*Platinum Home Mort. Corp. v. Platinum Fin. Group, Inc.*, 149 F.3d 722 (7th Cir. 1998) .......... 35

*Prewitt v. Moore*, 840 F. Supp. 436 (N.D. Miss.1993)................................................................... 18

*Quinones v. City of Evanston, Illinois*, 58 F.3d 275 (7th Cir.1995) ...................................... 22, 23

*Regents of Univ. of Cal. v. Bakke*, 438 U.S. 265 (1978)................................................................. 19

*Roland Mach. Co. v. Dresser Indus.*, 749 F.2d 380 (7th Cir. 1984)................................. 31, 32, 33

*Ross v. Texas Educ. Agency*, 409 F. App'x 765 (5th Cir. 2011) .................................................... 17

*Ross v. Texas Educ. Agency*, No. CIV.A. H-08-3049,
    2009 WL 3254935 (S.D. Tex. Sept. 28, 2009) ................................................................. 17

*Sailors v. Bd. of Educ. of Kent Co.*, 387 U.S. 105 (1967)....................................................... passim

*Sailors*, 387 U.S ........................................................................................................................... 14

*Scheuer v. Rhodes*, 416 U.S. 232 (1974) ........................................................................................ 5

*Schneider Nat'l Carriers, Inc. v. Carr*, 903 F.2d 1154 (7th Cir. 1990)........................................ 24

*Searcy v. Williams*, 656 F.2d 1003 (5th Cir.1981)................................................................. 17, 18

*Segovia v. Board of Elections Commissioners for City of Chicago*,
    --F.Supp.3d--, 2016 WL 4439947 (N.D. Ill. Aug. 23, 2016) ........................................ 10

*Shady v. Tyson*, 5 F. Supp. 2d 102 (E.D.N.Y. 1998) ..................................................................... 35

*Sherman v. Township High School District 214*, 937 N.E.2d 286 (Ill. Ct. App. 2010)................ 22

*Tigrett v. Cooper*, 855 F. Supp. 2d 733 (W.D. Tenn. 2012)......................................................... 10

*Travis v. Reno*, 163 F.3d 1000 (7th Cir. 1998) ............................................................................. 22

*Tully v. Edgar*, 171 Ill. 2d 297 (1996) .......................................................................................... 12

*Tyrer v. City of S. Beloit*, 456 F.3d 744 (7th Cir. 2006) ........................................... 24, 26, 27, 28

*Vill. of Arlington Heights v. Metro. Housing Dev. Corp*, 429 U.S. 252 (1977) ........................... 13

*W.A. Mack, Inc. v. Gen. Motors Corp.*, 260 F.3d 886 (7th Cir. 1958) ........................................ 32

*Weinstein v. Edgar*, 826 F. Supp. 1165 (N.D. Ill. 1993).............................................. 20, 21, 22

*Weksler v. Collins*, 317 Ill. 132 (1925) ........................................................................................... 7

*Welch v. Bd. of Educ.*, 477 F. Supp. 959 (D. Md. 1979) .......................................................... 9, 14

*Westinghouse Elec. Corp. v. Free Sewing Mach. Co.*, 256 F.2d 806 (7th Cir. 1958) ................. 34

*Williams v. State Bd. of Elections*, 696 F. Supp. 1563 (N.D. Ill. 1988)........................................ 18

*Wilton v. Seven Falls Co.*, 515 U.S. 277 (1995) ........................................................................... 29

*Winter v. Natural Res. Def. Council*, 555 U.S. 7 (2008) ................................................. 31, 32, 34

## Statutes

2 U.S.C. § 2000d *et seq*............................................................................................................... 4

28 U.S.C. § 1446(a) ...................................................................................................................... 22

28 U.S.C. § 2201(a) ...................................................................................................................... 23

52 U.S.C. § 10301 ................................................................................................................... 4, 14

105 ILCS 5/1A ............................................................................................................................. 17

105 ILCS 5/33-1 *et seq*. ........................................................................................................ 17, 18

105 ILCS 5/34-3 ................................................................................................................. 1, 3, 17

iv

105 ILCS 5/34-53 - 54.1 .......................................................................................................... 13

**Rules**

Fed. R. Civ. P. 8(a)(2) .............................................................................................................. 4

Fed. R. Civ. P. 12(b)(6) ............................................................................................................ 4

Fed. R. Civ. P. 65(a)(2) ........................................................................................................... 29

Defendants James Meeks, Steven Gilford, Melinda LaBarre, Curt Bradshaw, Lula Ford, Craig Lindvahl, Eligio Cerda Pimentel, Cesilie Price, and John Sanders, the members of the Illinois State Board of Education, in their official capacities (the "ISBE Defendants"), and the State of Illinois (the "State," and together with the ISBE Defendants, the "State Defendants"); by their attorney, Illinois Attorney General Lisa Madigan, hereby submit this Combined Memorandum of Law in Support of their Motion to Dismiss Plaintiffs' Complaint and in Response to Plaintiffs' Motion for Preliminary Injunction.

## INTRODUCTION

Plaintiffs are residents and registered voters of the City of Chicago, and a majority of the Plaintiffs are parents or grandparents of Chicago Public Schools students. *See* Dkt. 1 (Complaint) ¶¶ 6-12. More than half of the Plaintiffs have also served as a Local School Council ("LSC") member. *Id*. ¶¶ 6, 7, 10. Plaintiffs seek to invalidate a statute that has been in effect for over 20 years.

On October 5, 2016, Plaintiffs commenced this action, challenging Defendants' enforcement of Section 34-3 of the Illinois School Code, 105 ILCS 5/34-3, also known as the Chicago School Reform Amendatory Act of 1995. Plaintiffs also filed a related action in Cook County Circuit Court the same day, Case No. 16 CH 13159 (Mullen, J.). *See* Ex. A hereto. Plaintiffs primarily complain that in all of the State's school districts but the City of Chicago, Illinois citizens have the right to elect members of the school board within their local district. Dkt. 1 ¶¶ 19-20. Pursuant to Section 34-3, the mayor of Chicago has sole and exclusive authority to appoint members of the Board of Education of the City of Chicago ("Chicago Board"). 105 ILCS 5/34-3.

1

On November 30, 2016, Plaintiffs filed a Motion for Preliminary Injunction, seeking an order requiring Defendants to draft procedures for an April 4, 2017 election, or in the alternative, to enter permanent injunctive relief ordering Defendants to hold said election. Dkt. 25. Plaintiffs seek preliminary injunctive relief on Count I (right to vote under the Fourteenth and First Amendments) and Count III (violation of Section 2 of the Voting Rights Act based on discriminatory impact). Dkt. 33 at 1. Plaintiffs have not moved for a preliminary injunction based on their "discriminatory intent" claim under Section 2 of the Voting Rights Act. *Id*. at 2. Plaintiffs have also requested an expedited final judgment on the merits of these two claims. *Id*.

Each of Plaintiffs' claims fails. The challenged statute does not deny Plaintiffs the equal right to vote, nor does it violate the Plaintiffs' rights under the Due Process and Equal Protection Clauses of the Fourteenth Amendment, the Voting Rights Act, the Fifteenth Amendment, or Title VI of the Civil Rights Act. Moreover, the ISBE Defendants should be dismissed because they are not the proper defendants under the Eleventh Amendment. Accordingly, Plaintiffs' Complaint should be dismissed. Alternatively, this Court should stay or dismiss this case pursuant to either *Colorado River* abstention or the *Wilton-Brillhart* doctrine. Finally, the Plaintiffs' request for preliminary or permanent injunctive relief should also be denied. Plaintiffs cannot demonstrate a likelihood of success on the merits, nor have they established irreparable harm, and the harm to the State and the public outweighs any harm to the Plaintiffs.

## BACKGROUND

### A.   The Election Procedures for the Chicago Board of Education

In 1988, the General Assembly enacted the Chicago School Reform Act of 1988 ("1988 Act"). The 1988 Act established elected local school councils ("LSCs"), which had the authority to select and evaluate school principals, approve annual school improvement plans, and help develop and approve school budgets. Additionally, the 1988 Act expanded the Chicago Board from eleven

2

members to fifteen members. The 1988 Act also created a School Board Nominating Commission ("Nominating Commission"), which was responsible for screening potential candidates and providing the mayor with a slate of three candidates for each vacant position on the fifteen-member Chicago Board. Under the 1988 Act, the mayor had thirty days to choose the Chicago Board members from the list of candidates provided by the Nominating Commission. All of the mayor's selections of Chicago Board members required approval from the City Council.

In 1995, the General Assembly enacted the legislation at issue in this lawsuit. Section 34-3 of the School Code eliminated the Nominating Commission, and provided the mayor with sole and exclusive authority in the selection of all Chicago Board members, without any approval from the City Council.

**B.      Plaintiffs' Allegations**

Plaintiffs' Complaint includes four counts. In Count I, Plaintiffs allege that Section 34-3 of the School Code violates their right to vote and participate in the political process, as protected by the Equal Protection Clause of the Fourteenth Amendment and the First Amendment. Plaintiffs seek a declaration that Defendants violated their constitutional right to vote and participate in the political process and an injunction ordering Defendants to develop a plan with the Chicago Board of Elections to hold an election for members of the Chicago Board "as soon as possible." Dkt. ¶ 96(C).

In Count II, Plaintiffs allege that the continued enforcement of Section 34-3 of the School Code—by allowing the Chicago Board to levy taxes on Plaintiffs and other taxpayers of the City of Chicago without any elected representation—violates their rights under the Equal Protection and Due Process Clauses of the Fourteenth Amendment, as well as their rights under Article IV,

Section 4 of the United States Constitution. Plaintiffs seek the same relief under Count II as for Count I.

In Count III, Plaintiffs allege that the State of Illinois violated Section 2 of the Voting Rights Act, 52 U.S.C. § 10301, by enacting Section 34-3 of the School Code, both because Section 34-3 has a discriminatory impact and because it was enacted with racially discriminatory intent. Dkt. 1 ¶ 109. Plaintiffs seek a declaration that the State violated Section 2 of the Voting Rights Act and an injunction ordering the State to develop a plan to hold an election for members of the Chicago Board "as soon as possible." *Id.* ¶ 129(C).

Finally, in Count IV, Plaintiffs allege that the State violated the Fourteenth and Fifteenth Amendments by using a state electoral scheme that results in a denial or abridgement of the right of the minority race Plaintiffs to vote on account of race or color. They further allege that Defendants have violated Title VI of the Civil Rights Act of 1964, 2 U.S.C. § 2000d *et seq.*, by "depriv[ing] plaintiffs of their right to be free of racially discriminatory practices by programs that receive federal financial assistance." Dkt. 1 ¶ 132. Plaintiffs seek a declaration that Section 34-3 violates the Fourteenth and Fifteenth Amendments and Title VI of the Civil Rights Act, and an injunction ordering Defendants to develop a plan with the Chicago Board of Elections to hold an election for members of the Chicago Board "as soon as possible." *Id.*

## ARGUMENT

### I.     Plaintiffs' Complaint Should Be Dismissed.

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) does not test whether the plaintiff will prevail on the merits but instead whether the claimant has properly stated a claim. *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). A pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

Detailed factual allegations are not required, but a plaintiff's complaint may not merely state an "unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.*

A plaintiff's complaint must contain allegations that "state a claim to relief that is plausible on its face." *Iqbal,* 556 U.S. at 663, *citing Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In reviewing the sufficiency of a complaint under this standard, the court must accept as true all well-pleaded factual allegations. *McCauley v. City of Chicago,* 671 F.3d 611, 616 (7th Cir. 2011). However, legal conclusions and "conclusory allegations merely reciting the elements of the claim are not entitled to this presumption of truth." *Id.*

## A. Plaintiffs' Claims Should Be Dismissed Because Section 34-3 of the School Code is Valid and Constitutional.

Plaintiffs' Complaint fails to state a legal claim as a matter of law because the statute challenged (*i.e.*, Section 34-3 of the School Code), which has been in effect for over 20 years, is valid and constitutional.

### 1. Count I fails to state a claim under the Equal Protection Clause and the First Amendment because Section 34-3 of the School Code does not deny Plaintiffs the equal right to vote and participate in the political process.

In Count I of their Complaint, Plaintiffs allege that Section 34-3 violates their equal right to vote under the Equal Protection Clause of the Fourteenth Amendment and the First Amendment. Plaintiffs' claim fails as a matter of law because they have no constitutional right to elect non-legislative, administrative officers, such as school board members. *Sailors v. Bd. of Educ. of Kent Co.,* 387 U.S. 105, 108 (1967) ("We find no constitutional reason why state or local officers

5

of the nonlegislative character involved here may not be chosen by the governor, by the legislature, or by some other appointive means rather than by an election.").

A school board is a municipal corporation, subject to the will of the legislature. *East St. Louis Fed'n of Teachers, Local 1220 v. East St. Louis Sch. Dist. No. 189 Fin. Oversight Panel*, 178 Ill. 2d 399, 413 (1997), *citing Cronin v. Lindberg*, 66 Ill. 2d 47, 55 (1976). The legislature has the discretion to formulate the character, function, and duties of school boards. *Id*. at 413-14. "No resident of a school district has an inherent right of franchise insofar as school elections are concerned. His right to vote therein is purely a permissive one bestowed by legislative grace in furtherance of the policy of the legislature." *Latham v. Bd. of Educ. of City of Chicago*, 31 Ill. 2d 178, 186 (1964), *quoting People v. Deatherage*, 401 Ill. 25, 35 (1948).

It is well established that the Equal Protection Clause permits the classification of laws based on geographical or population factors rather than general statewide application. "The Fourteenth Amendment does not prohibit legislation merely because it is special, or limited in its application to a particular geographical or political subdivision of the state." *Holt Civic Club v. City of Tuscaloosa,* 439 U.S. 60, 70-71 (1978), *quoting Fort Smith Light Co. v. Paving Dist.,* 274 U.S. 387, 391 (1927). The Equal Protection Clause is violated only if the statute's classification "rests on grounds wholly irrelevant to the achievement of the state's objective." *Holt Civic Club,* 439 U.S. at 71 (citation omitted). *See also Kadrmas v. Dickinson Public Schools,* 487 U.S. 450, 457-58 (1988); *Hearne v. Board of Ed. of City of Chicago,* 185 F.3d 770, 774 (7th Cir. 1999) ("the Illinois statute books are riddled with laws that treat communities with more than 500,000 residents—*i.e.*, Chicago—differently from smaller ones."); *Latham*, 31 Ill. 2d at 186, *quoting Weksler v. Collins*, 317 Ill. 132, 138 (1925) ("[A] statute which applies to one city, only, does not deny the equal protection of the laws where it is based on some real distinction between the

6

particular city and the other territory of the state.").

In 1995, the General Assembly determined that the people of Chicago would best be served by a Chicago Board appointed by the mayor. Section 34-3 of the School Code is entirely valid and does not infringe upon any constitutional right. To the extent Plaintiffs complain about the current state of public education in the City of Chicago, such concerns are better raised with the legislature, not the judiciary. "Whether or not the General Assembly has chosen the best method to accomplish an objective is a legislative and not a judicial question." *Latham*, 31 Ill. 2d at 184. "The wisdom or unwisdom of legislative action in determining the means to be adopted to resolve an existing social problem is not for the judiciary to decide." *Fumarolo v. Chi. Bd. of Educ.*, 142 Ill. 2d 54, 62-63 (1990).

In fact, the General Assembly is currently considering legislation, which if enacted, will establish an election for Chicago Board members beginning in 2018. *See* HB0557.[1]  The bill passed the Illinois House by an overwhelmingly majority, 110 to 4. Certainly, if the bill is enacted, the relief requested by Plaintiffs is moot. A case is moot if the dispute is "no longer embedded in any actual controversy about the plaintiffs' particular legal rights." *Already, LLC v. Nike, Inc.*, --- U.S. ---, 133 S. Ct. 721, 727 (2013). The Court must dismiss a claim as moot if it can "no longer grant any effectual relief." *Medlock v. Trustees of Ind. Univ.*, 683 F.3d 880, 882 (7th Cir. 2012).

Regardless of whether legislation will be enacted in the near future which will allow Chicago citizens to elect Chicago Board members, the appointment of school board members has been upheld in cases involving other cities such as Cleveland and Detroit. *See Mixon v. State of*

---

[1] The text and status of the proposed legislation (HB0557) can be found at http://www.ilga.gov/legislation/fulltext.asp?DocName=09900HB0557sam001&GA=99&SessionID=88&DocTypeID=HB&LegID=85009&DocNum=557&GAID=13&Session (last visited Dec. 19, 2016).

7

*Ohio*, 193 F.3d 389 (6th Cir. 1999); *Moore v. Detroit School Reform Bd.*, 293 F.3d 352 (6th Cir. 2002). In *Mixon*, voters and taxpayers of Cleveland sought to invalidate Ohio legislation which allowed the mayor of Cleveland to appoint school board members. 193 F.3d at 393. Prior to the legislation at issue there, Cleveland residents voted for school board members in public elections. *Id*. at 394. In upholding the statute, the court held that "[a]lthough Plaintiffs have a fundamental right to vote in elections before them, there is no fundamental right to elect an administrative body such as a school board, even if other cities in a state may do so." *Id*. at 403, *citing Sailors*, 387 U.S. at 108, *Welch v. Bd. of Educ.*, 477 F. Supp. 959, 964 (D. Md. 1979). The court further recognized that "appointed school boards may provide significant benefits in a State's attempt to improve local schools. State legislatures need the freedom to experiment with different techniques to advance public education and this need to experiment alone satisfies the rational basis test." *Id*., *citing Sailors*, 387 U.S. at 110-11.

Similarly, in *Moore*, the court upheld Michigan legislation which transitioned Detroit's school board from an elective to appointive office. 293 F.3d at 354. The legislation at issue was designed to provide Detroit Public Schools students with the "opportunity to achieve a quality education" and address problems that legislators perceived to exist in school districts with large populations. *Id*. at 356, 370. In pertinent part, the court held that "citizens do not have a fundamental right to elect nonlegislative, administrative officers such as school board members." *Id*. at 365, *citing Sailors*, 387 U.S. at 108. Moreover, because the court held that the challenged statute did not infringe upon any fundamental right, there was no need to apply strict scrutiny to plaintiffs' equal protection claim. *Id*. at 370.

Plaintiffs attempt to distinguish *Mixon* and *Moore* by arguing that these cases "conflict with the holdings of the Supreme Court. Dkt. 33 at 22. But Plaintiffs' insistence that the

8

*Anderson/Burdick* framework applies here (*Id*. at 22-23) is misguided. The rational basis test is often used in cases regarding voting rights and elections. For example, it was recently used by Judge Gottschall in *Segovia v. Board of Elections Commissioners for City of Chicago*, --F.Supp.3d--, 2016 WL 4439947 (N.D. Ill. Aug. 23, 2016). The question was whether a federal statute violated equal protection because residents of Guam, Puerto Rico, or the U.S. Virgin Islands could not cast absentee ballots in Illinois, while those in the Northern Marianas Islands could. The Court held rational basis was the correct standard, and rejected the constitutional challenge to a federal law regarding absentee voting. *Id.* at *1, *18 n.19. In *Johnson v. Bredesen,* 624 F.3d.742 (6th Cir. 2010), the constitutionality of a state's law on felon disfranchisement was analyzed, and upheld as constitutional, under the rational basis test. *Id.* at 746-48. *See also Tigrett v. Cooper,* 855 F. Supp. 2d 733, 753 (W.D. Tenn. 2012) (race-based vote dilution claim analyzed under rational basis test); *Green v. City of Tucson,* 340 F.3d 891, 902 (9th Cir. 2003) (no right to vote on municipal incorporation, rational basis test applied); *Carlson v. Wiggins,* 675 F.3d 1134, 1141-42 (8th Cir. 2012) (no fundamental right to vote for members of commission appointing judges, rational basis test applied); *Harvey v. Brewer,* 605 F.3d 1067, 1079-80 (9th Cir. 2010) (conditions for restoring felons' right to vote, rational basis test); *American Assoc. of People with Disabilities v. Shelley,* 324 F.Supp.2d 1120, 1127-28 (C.D. Cal. 2004) (decertification of touch screen voting device arguably impacting disabled voters, citing *Burdick,* rational basis test); *One Wisconsin Institute v. Nichol*, 155 F.Supp.3d 898, 903 (W.D. Wis. 2015) (voter registration, finding rational basis for distinction between voters moving in to the state and those moving within the state).

    Just as was the case in Ohio and Michigan, the Illinois General Assembly has recognized the inherent problems with public education in large cities, such as Chicago:

9

> This Court takes judicial notice that the problems inherent in the supervision and management of a school system in a metropolitan area of 500,000 or more, and particularly, in the city of Chicago, are far more complex and may well require different modes of operation than a system in an average-size district. The intricacies of a metropolitan school district of this magnitude require an especially high degree of competence in the members of the Board. The legislature has determined that such personnel can best be obtained as Board members in large cities having a population over 500,000 by the appointive process rather than by a general city election.

*Latham*, 31 Ill. 2d at 184; *see also Fumarolo*, 142 Ill. 2d at 61 ("The record shows that, as in most large cities, Chicago has serious problems in its public school system.").

By enacting Section 34-3 of the School Code, it can be presumed that the General Assembly recognized that the Chicago Board can best be obtained "by the appointive process rather than by a general city election." *Latham*, 31 Ill. 2d at 184; *see Jacobson v. Dep't of Pub. Aid*, 171 Ill. 2d 314, 324 (1996) (noting that statute challenged under Equal Protection Clause will be upheld under rational basis review "if any set of facts can reasonably be conceived to justify the classification"). "Appointed school boards may provide significant benefits in a State's attempt to improve local schools. State legislatures need the freedom to experiment with different techniques to advance public education and this need to experiment alone satisfies the rational basis test." *Mixon*, 193 F.3d at 403; *see also Sailors*, 387 U.S. at 110-11 ("Viable local governments may need many innovations, numerous combinations of old and new devices, great flexibility in municipal arrangements to meet changing urban conditions. We see nothing in the Constitution to prevent experimentation."). And significantly, the Illinois Supreme Court has indicated that legislation which changes a school board from an elective to appointive office is constitutional. *See Tully v. Edgar*, 171 Ill. 2d 297 (1996).

To prevail on an Equal Protection claim, the Plaintiffs must prove discriminatory intent, not just discriminatory effect (*Mixon*, 193 F.3d at 407), and they cannot do so here. Section 34-3

of the School Code does not contain any racial classification. "Where facially neutral legislation is challenged on the grounds that it discriminate on the basis of race, the enactment will need to withstand strict scrutiny only if the plaintiff can prove that it 'was motivated by a racial purpose or object' or 'is unexplainable on grounds other than race.'" *Moore*, 293 F.3d at 369*, quoting Hunt v. Cromartie*, 526 U.S. 541, 546 (1999). Proving that a law has a racially disparate impact, without more, is insufficient to establish an equal protection violation. *Id.*, *citing Vill. of Arlington Heights v. Metro. Housing Dev. Corp*, 429 U.S. 252, 264-65 (1977). Here, the General Assembly simply sought to address a problem it perceived in a large urban school district; there is no merit to Plaintiffs' baseless claim that the General Assembly intended to disenfranchise minorities. As the Seventh Circuit observed with regard to another provision of the 1995 Act:

> [T]here is nothing here to indicate that the Illinois General Assembly structured the Chicago school reform legislation specifically because it wanted to disadvantage African Americans. There are substantial numbers of African Americans in many other cities in the state, and it is simply too great a stretch to say that the population represented by the Chicago school system is such a good proxy for African Americans that the ostensibly neutral classification is "an obvious pretext for racial discrimination."

*Hearne*, 185 F.3d at 776.

Finally, there is no merit to Plaintiffs' argument that Section 34-3 of the School Code violates the principle of one-person, one-vote. Dkt. 33 at 23. "Where a body is appointed and not elected, there need not be compliance with the one person, one vote rule." *Fumarolo*, 142 Ill. 2d at 98, *citing Sailors*, 387 U.S. at 111 ("[s]ince the choice of members of the county school board did not involve an election and since none was required for these nonlegislative offices, the principle of 'one man, one vote' has no relevancy"). Indeed, the federal courts have repeatedly found that there is no right to vote for administrative bodies like school boards. *See, e.g., Sailors*, 387 U.S. at 111 (no right to vote for county school board); *Green,* 340 F.3d at 902 (no right to vote

11

on municipal annexation); *Carlson,* 675 F.3d at 1141-42 (8th Cir. 2012) (no fundamental right to vote for members of commission appointing judges); *Hawkins v. Johanns*, 88 F. Supp. 2d 1027, 1044 (D. Neb. 2000) ("[T]here is no fundamental right to elect a school board even if voters in other political subdivisions of a state may do so."); *Welch,* 477 F. Supp. at 964 (state statute providing for appointed school board in Baltimore County but elected school boards in eight of Maryland's twenty-three counties not itself suspect and does not interfere with exercise of fundamental right).

Because Section 34-3 of the School Code is constitutional as a matter of law and does not violate Plaintiffs' right to vote, Count I fails to state a claim and should be dismissed.

> **2. Count II fails to state a claim because Section 34-3 of the School Code does not violate Plaintiffs' rights under the Due Process and Equal Protection Clauses.**

In Count II of their Complaint, Plaintiffs allege that allowing the Chicago Board to levy taxes on taxpayers of the City of Chicago without any elected representation violates their rights under the Equal Protection and Due Process Clauses of the Fourteenth Amendment. Plaintiffs' argument is without merit. *First*, because the Chicago Board is appointed by the mayor, there is public accountability. Citizens have the fundamental constitutional right to vote for the mayoral office. And because all Chicago voters have an equal voice in electing the mayor, all voters indirectly have an equal voice in the selection of Chicago Board members. Indeed, citizens have had the opportunity to elect a mayor who appoints Chicago Board members based on the constituents' needs and preferences for the last 20 years. *See Fumarolo*, 142 Ill. 2d at 99, *citing Sailors*, 387 U.S. at 106 (recognizing that those individuals responsible for making the school board appointments in *Sailors* were constitutionally selected).

*Second*, as previously discussed, the legislative scheme of an appointed, rather than an elected school board, is valid and constitutional. In *Sailors*, the Supreme Court upheld the use of an appointed county school board, which had the power to "levy . . . taxes." 387 U.S. at 109 n.7. Here, *Latham* is instructive. *Latham* involved a representative suit filed by citizens, taxpayers, voters, and residents of Chicago, who sought two things: (1) to declare that the statutes providing for the creation and corporate existence of the Chicago Board were unconstitutional, and (2) to enjoin the levy, collection, and expenditure of any and all taxes for Chicago schools. 31 Ill. 2d at 180. The Court rejected the plaintiffs' due process claim that the appointive board's power to tax deprived plaintiffs of property without due process. *Id.* at 186. The Court reasoned that:

> The legislature is mandated by the constitution of Illinois to establish a system of free schools for all the children of the State and in furtherance of such legitimate legislative responsibilities the General Assembly may delegate to such agencies as it sees fit the power to do those things which it might properly but cannot understandingly or advantageously do itself.

*Id.*; *see also Hoogasian v. Reg'l Transp. Auth.*, 58 Ill. 2d 117, 130-32 (1974) (legislation which authorized creation of the Regional Transportation Authority and which gave the Authority the power to impose gasoline and parking taxes at a rate not to exceed five percent did not unconstitutionally delegate the legislative power of taxation to the Authority).

The *Latham* Court further explained that "since the Board's functions and powers are expressly defined…as are the maximum rates at which taxes may be levied, it is apparent that the powers of the Board are not absolute, unregulated or undefined as argued by plaintiffs." *Id.* at 187. Here, the Chicago Board's duties and powers are expressly codified in the School Code. Specifically, the School Code expressly delegates the Chicago Board with the power to levy property taxes, and sets a statutory cap on the Chicago Board's levy power. *See* 105 ILCS 5/34-53 - 54.1.

13

Because Section 34-3 of the School Code is constitutional as a matter of law and does not violate Plaintiffs' right to equal protection and due process, Count II should be also be dismissed.

### 3. Count III fails to state a claim because Section 34-3 of the School Code does not violate the Voting Rights Act.

In Count III of their Complaint, Plaintiffs allege that Section 34-3 violates Section 2 of the Voting Rights Act, either because it was passed with a discriminatory intent or because it has a discriminatory effect. Dkt. 1 ¶¶ 106, 109, 116. However, Plaintiffs' claim fails because "by its own terms, the [Voting Rights] Act covers only the *election and nomination* of representatives, not appointment processes. *Mixon*, 193 F.3d at 407; *see also* 52 U.S.C. § 10301(b). Further, Section 2 refers to the nomination of "representatives," whom the Supreme Court has defined as "winners of representative, popular elections" or "someone who has prevailed in a popular election." *Chisom v. Roemer*, 501 U.S. 380, 399-400 (1991). Based on this statutory language, the federal courts have consistently held that Section 2 of the Voting Rights Act does not apply to appointive offices. *See, e.g.*, *Mixon*, 193 F.3d at 407, *Moore*, 293 F.3d at 363-64; *African–American Citizens for Change v. St. Louis Bd. of Police Comm'r*, 24 F.3d 1052, 1053 (8th Cir.1994); *Dillard v. Crenshaw County*, 831 F.2d 246, 251 (11th Cir.1987); *Searcy v. Williams*, 656 F.2d 1003, 1010 (5th Cir.1981), *aff'd, Hightower v. Searcy*, 455 U.S. 984 (1982).[2]

Plaintiffs attempt to distinguish *Mixon* by arguing that it misapplies the Supreme Court's dictum in *Chisom* that "of course" judges could be appointed instead of elected without violating

---

[2] *See also Ross v. Texas Educ. Agency*, No. CIV.A. H-08-3049, 2009 WL 3254935, at *8 (S.D. Tex. Sept. 28, 2009), *aff'd*, 409 F. App'x 765 (5th Cir. 2011); *Friends of Eudora Pub. Sch. Dist. of Chicot Cty., Ark. v. Beebe*, No. 5:06CV0044, 2008 WL 828360, at *7 (E.D. Ark. Mar. 25, 2008); *Holley v. City of Roanoke, Alabama*, 162 F. Supp. 2d 1335, 1341 (M.D. Ala. 2001) ("The Board of Education members . . . are appointed, not elected. Because they are not elected officials, section 2 has no application."); *African–American Legal Defense Fund, Inc. v. New York*, 8 F. Supp. 2d 330, 339 n.14 (S.D.N.Y.1998); *African–American Voting Rights Legal Defense Fund, Inc. v. Missouri*, 994 F. Supp. 1105, 1122 (E.D. Mo.1997), *aff'd. per curiam*, 133 F.3d 921 (8th Cir.1998); *Prewitt v. Moore*, 840 F. Supp. 436, 440 (N.D. Miss.1993); *Williams v. State Bd. of Elections*, 696 F. Supp. 1563, 1568–69 (N.D. Ill. 1988).

14

the Voting Rights Act. Dkt. 33 at 23. Plaintiffs argue that the *Chisom* court "was assuming that

Louisiana would have appointed judges in every parish of Louisiana." *Id*. But Plaintiffs' argument

ignores the plain language of Section 2, as well as the numerous other federal courts that have

concluded that Section 2 of the Voting Rights Act does not apply to the appointment of officials.

Moreover, the Fifth Circuit held, *inter alia*, that Section 2 of the Voting Rights Act did not apply to

a state statute that allowed the school board for one city to be appointed. *Searcy*, 656 F.2d at 1010

("[T]his case involved an appointive rather than an elective scheme, and thus the district court was

correct in holding that voting rights did not apply.") The Supreme Court affirmed the Fifth Circuit

without comment, implicitly agreeing with the Fifth Circuit's conclusion on this point. *Hightower*,

455 U.S. 984.

Finally, as discussed above, Plaintiffs' discriminatory intent claim under Section 2 of the

Voting Rights Act should also be dismissed because there is no merit to Plaintiffs' claim that the

General Assembly intended to disenfranchise minorities by passing the 1995 Act. For these

reasons, Plaintiffs' claims under Section 2 of the Voting Rights Act should be dismissed.

> **4. Count IV fails to state a claim under the Fourteenth and Fifteenth Amendments or Title VI of the Civil Rights Act because Section 34-3 of the School Code does not deny or abridge the right of minority race Plaintiffs to vote on account of race or color or discriminate on the basis of race.**

Finally, Count IV of Plaintiffs' Complaint alleges that Section 34-3 violates the Fourteenth

and Fifteenth Amendments, as well as Title VI of the Civil Rights Act of 1964, but each of these

claims fail. Plaintiffs' claims under the Fourteenth Amendment fail for the reasons discussed in

Part I.A.1 above. Plaintiffs' claims under the Fifteenth Amendment likewise fail because Plaintiffs

cannot establish discriminatory intent. *See Mixon*, 193 F.3d at 406; *Moore*, 293 F.3d at 370. As

discussed above, Section 34-3 is a neutral classification and there is no evidence that the General

Assembly enacted Section 34-3 "specifically because it wanted to disadvantage African

15

Americans." *Hearne*, 185 F.3d at 776. Thus, Plaintiffs' claims under the Fourteenth and Fifteenth Amendments should also be dismissed.

Finally, Plaintiffs' claims under Title VI of the Civil Rights Act should also be dismissed. It is "beyond dispute" that Title VI prohibits only intentional discrimination. *Alexander v. Sandoval*, 532 U.S. 275, 280 (2001). Title VI "proscribe[s] only those racial classifications that would violate the Equal Protection Clause or the Fifth Amendment." *Id*. at 281, *quoting Regents of Univ. of Cal. v. Bakke*, 438 U.S. 265, 278 (1978). As discussed above, there is no merit to Plaintiffs' allegations of discriminatory intent with regard to Section 34-3. Moreover, to state a cause of action under Title VI, "a plaintiff must allege that he is the intended beneficiary of, an applicant for, or a participant in a federally funded program." *Miller v. Phelan*, 845 F. Supp. 1201, 1207 (N.D. Ill. 1993); *see also Doe on Behalf of Doe v. St. Joseph's Hosp. of Fort Wayne*, 788 F.2d 411, 418–19 (7th Cir. 1986), *overruled on other grounds by Alexander v. Rush N. Shore Med. Ctr.*, 101 F.3d 487 (7th Cir. 1996). Plaintiffs in this case have not alleged that they are the intended beneficiaries of any federal funded program. Plaintiffs' Title VI claim should be dismissed for this reason as well.

**B.     Plaintiffs' Claims against the ISBE Defendants Should Be Dismissed because They Are Not the Proper Defendants.**

Plaintiff has sued the ISBE Defendants "in their official capacity as the state officials chiefly responsible for the execution and administration of the Illinois School Code." Dkt. 1 ¶ 14. The claims against the ISBE Defendants should be dismissed because they are not the proper defendants for a challenge to the constitutionality of Section 34-3. While the Eleventh Amendment allows suits against state officials for injunctive relief, the official must have a sufficiently close connection to the enforcement or implementation of the statute at issue. *See Weinstein v. Edgar*, 826 F. Supp. 1165, 1166-67 (N.D. Ill. 1993), *citing Ex parte Young*, 209 U.S. 123, 157 (1908); *Ill.*

*League of Advocates for the Developmentally Disabled v. Quinn*, No. 13 C 1300, 2013 WL
5548929, at *4 (N.D. Ill. Oct. 8, 2013); *Children's Healthcare is a Legal Duty, Inc. v. Deters*, 92
F.3d 1412, 1416 (6th Cir. 1996). These courts have consistently held that a state official's "general
obligation to faithfully execute [or enforce] the laws" does not make that official the proper
defendant for a constitutional challenge to a statute. *Weinstein*, 826 F. Supp. at 1167 (holding that
plaintiff could not sue governor of Illinois in constitutional challenge to statute making Good
Friday a school holiday); *Illinois League of Advocates*, 2013 WL 5548929 at 4 (holding that the
governor of Illinois was not the proper defendant for constitutional challenge to the state's closing
of two facilities for developmentally disabled individuals); *Children's Healthcare*, 92 F.3d at 1416
(holding that plaintiff could not sue the attorney general of Ohio to force fuller enforcement of a
statute). In this case the members of the Illinois State Board of Education have no specific duty
with regard to the appointment of the members of the Chicago Board of Education (105 ILCS
5/34-3), nor are they involved in the election of other local school boards (105 ILCS 5/33-1 *et
seq.*).[3] Thus, the Eleventh Amendment bars suit against the ISBE Defendants, and they should
accordingly be dismissed.

---

[3] The duties of the Illinois State Board of Education include the following: (1) to "determine the
qualifications of and appoint a chief education officer" (105 ILCS 5/1A-4(B)); (2) to determine "the
educational policies and guidelines for public schools, pre-school through grade 12 and Vocational
Education in the State of Illinois" (105 ILCS 5/1A-4(C)); (3) to "analyze the present and future aims, needs,
and requirements of education in the State of Illinois and recommend to the General Assembly the powers
which should be exercised by the Board" (*id.*); (3) to "recommend the passage and the legislation necessary
to determine the appropriate relationship between the Board and local boards of education and the various
State agencies and [to] recommend desirable modifications in the laws which affect schools" (*id.*); (4) to
provide an annual report to the General Assembly and the Governor "which provides a critique and analysis
of the status of education in Illinois and which identifies its specific problems and recommends express
solutions therefor" as well as other information (105 ILCS 5/1A-4(E)); (5) to take enumerated actions to
assist school districts deemed to be in financial difficulties (105 ILCS 5/1A-8); (6) to "disseminate
information concerning the Children's Privacy Protection and Parental Empowerment Act" (105 ILCS
5/1A-9); and (6) to cooperate with the Department of Children and Family Services and the State Police to
develop a protocol to help children who may be exposed to methamphetamines (105 ILCS 5/1A-11).

17

The ISBE Defendants should also be dismissed because of the lack of "case or controversy" between Plaintiff and these Defendants. *Weinstein*, 826 F. Supp. at 1168 n.2. The proper defendant to name in a constitutional challenge is "the person whose actions cause injury, not the author of the legal rule that leads to those actions." *Travis v. Reno*, 163 F.3d 1000, 1007 (7th Cir. 1998); *see also Quinones v. City of Evanston, Illinois*, 58 F.3d 275, 277 (7th Cir.1995). Declaratory relief may be obtained only when there is a "substantial controversy[] between parties having adverse legal interests." *Alcan Aluminium Ltd. v. Dep't of Revenue of State of Or.*, 724 F.2d 1294, 1298 (7th Cir. 1984). As both the federal and state courts have held, where a state official is not involved with implementing or enforcing a statute, there is no controversy between the parties as required for a declaratory judgment action. *See Sherman v. Township High School District 214*, 937 N.E.2d 286, 292 (Ill. Ct. App. 2010) (school district, not the General Assembly or the State Board of Education, was the proper defendant where it was enforcing an Illinois statute by charging student a fee); *Quinones*, 58 F.3d at 277 (city, not state, was the proper defendant where it was not paying pension benefits because a state statute directed it not to do so); *Illinois Press Ass'n v. Ryan*, 743 N.E.2d 568, 569 (2001) (holding that the governor was not a proper defendant because he had no authority over the legislative branch's ethics commission).

In this case, Plaintiffs have not alleged that the ISBE Defendants have any special role in appointing the members of the Chicago Board of Education, nor have they alleged that the ISBE Defendants are involved in the election of other local school boards (105 ILCS 5/33-1 *et seq.*). Because the ISBE Defendants have caused no injury to Plaintiffs, there is no case or controversy between these Defendants and Plaintiffs. The ISBE Defendants should accordingly be dismissed from this case for this additional reason.

18

**C.      Alternately, this Court Should Abstain from Hearing this Case.**

To the extent that this Court does not dismiss the Complaint on the merits, it should abstain

from hearing the case under either *Colorado River* abstention or the *Wilton-Brillhart* doctrine.

### 1.   This Court should stay or dismiss the Complaint under *Colorado River* abstention.

To the extent this Court does not dismiss the Complaint for failure to state a claim, it should

stay or dismiss the Complaint on the alternative ground of abstention. In *Colorado River Water*

*Conservation Dist. v. United States*, 424 U.S. 800, 817-19 (1976), the Supreme Court held that,

where concurrent state and federal actions are "parallel," exceptional circumstances may warrant

abstention from deciding the federal action. Here, a concurrent, ongoing state court action is

parallel to this case. *See* Ex. A. Exceptional circumstances warrant abstention in this matter.

#### a.      This federal suit is parallel to Plaintiffs' state court action.

The present action is parallel to Plaintiffs' state court action (No. 16 CH 13159, Ex. A). To

be parallel, "it is not necessary that there by formal symmetry between the two actions." *Clark v.*

*Lacy*, 376 F.3d 682, 685 (7th Cir. 2004). Generally, a "suit is parallel when substantially the same

parties are contemporaneously litigating substantially the same issues in another forum." *Tyrer v.*

*City of S. Beloit*, 456 F.3d 744, 752 (7th Cir. 2006) (internal quotation marks omitted); *see also*

*Schneider Nat'l Carriers, Inc. v. Carr*, 903 F.2d 1154, 1156 (7th Cir. 1990). In deciding

parallelness, this Court should consider whether the two suits involve substantially the same

parties, arise out of the same facts, and raise similar factual and legal issues. *Tyrer*, 456 F.3d at

752.

The Plaintiffs in this action filed a state court action the same day that they filed this federal

action. Ex. A. In the state court action, Plaintiffs allege that the appointment of the Chicago Board

of Education under Section 34-3 of the School Code violates their right to equal protection of the

laws under Article I, Section 2 of the Illinois Constitution, that allowing the Chicago Board to levy taxes on Plaintiffs and other taxpayers of the City of Chicago without elected representation violates their right to due process of law under Article I, Section 2 of the Illinois Constitution. These claims are substantially the same as Count I and II of this action, especially because the Illinois courts generally follow the federal courts' interpretation of federal constitutional law when deciding state constitutional claims. *See Nevitt v. Langfelder*, 157 Ill.2d 116, 623 N.E.2d 281, 284 (1993) ("In resolving challenges brought under that provision of the Illinois Constitution, we apply the same standards that govern equal protection claims made under the Federal Constitution."); *Hope Clinic for Women, Ltd. v. Flores*, 2013 IL 112673, 991 N.E.2d 745, 757-60 (2013) (applying lockstep doctrine to due process claims). Moreover, the claims in both cases arise out of the same facts—that is, the facts surrounding the passage and implementation of Section 34-3.

Finally, the factual and legal issues between the state and federal actions are the same. While Plaintiffs have raised only state constitutional claims that their state court action, Plaintiffs could have raised their federal constitutional and statutory claims in the state court action. *See Hunziker v. German-Am. State Bank*, 697 F. Supp. 1007, 1014 (N.D. Ill. 1988), *aff'd*, 908 F.2d 975 (7th Cir. 1990) ("Illinois courts are constitutionally adequate forums for the litigation of federal constitutional and statutory claims, unless federal law has vested jurisdiction exclusively in the federal courts. . . . Civil Rights actions are not matters of exclusive federal jurisdiction."). The cases are so closely parallel that a decision in the state court would likely result in claim preclusion in this case. The two actions therefore are parallel for purposes of *Colorado River* abstention.

### b.    Exceptional circumstances warrant abstention.

Abstaining from hearing Plaintiffs' claim and dismissing this lawsuit in light of the on-going state court litigation is warranted under *Colorado River*. Ten factors are to be considered

in deciding whether exceptional circumstances exist to abstain: (1) whether the State has assumed jurisdiction over property; (2) inconvenience to the parties; (3) the need to avoid piecemeal litigation; (4) the order in which jurisdiction was obtained by the concurrent forums; (5) the source of governing law, state or federal; (6) the adequacy of state-court action to protect the plaintiff's rights; (7) the relative progress of state and federal proceedings; (8) the presence or absence of concurrent jurisdiction; (9) the availability of removal; and (10) the vexatious or contrived nature of the federal claim. *Tyrer*, 456 F.3d at 754. The first four are the primary factors. *Colorado River*, 424 U.S. at 818-19; *Tyrer*, 456 F.3d at 754.

The first and second factors are not applicable, for there is no property over which the State has assumed jurisdiction in this case and the convenience to the parties is in large measure the same in either forum.

The third factor favors abstention. "Piecemeal litigation occurs when different tribunals consider the same issue, thereby duplicating efforts and possibly reaching different results." *LaDuke v. Burlington N. R.R. Co.*, 879 F.2d 1156, 1560 (7th Cir. 1989) (internal quotation marks omitted). Substantially similar issues will be litigated in both this case and the state court case, and "both cases would be resolved by examining largely the same evidence." *Huon v. Johnson & Bell, Ltd.*, 657 F.3d 641, 647 (7th Cir. 2011) (stating that substantially overlapping evidence is "[o]ne important factor" in determining whether the suits are parallel). This allows a party to stall in one forum to ensure that the court most likely to rule in its favor acts first. This also presents the possibility that two forums will arrive at conflicting decisions. *See Tyrer*, 456 F.3d at 755, *citing LaDuke*, 879 F.2d at 1560). And it matters not whether the claims in the different forums are presented in identical ways, for "the danger of piecemeal litigation does not turn on formal identity

21

of issues but on concerns about the efficient use of judicial resources and the public's perception of the legitimacy of judicial authority." *Tyrer*, 456 F.3d at 756. Such concerns are present here.

The fourth factor is neutral because the state and federal actions were filed the same day. *Compare* Dkt. 1 with Ex. A. The source of the governing law (fifth factor) weighs slightly in favor of abstention. As discussed above, while the state court action involves only state constitutional claims, the Illinois courts generally look to federal law to decide such issues.

The sixth factor counsels in favor of abstention. The state court can hear constitutional challenges and federal civil rights claims, *Hunziker*, 697 F. Supp. at 1014, and there is no reason to believe that the state court cannot protect Plaintiffs' state and federal rights. *See Tyrer*, 456 F.3d at 757 ("The insinuation that Illinois courts will not live up to the standard of full and fair adjudication of the [federal issues] is pure speculation that we expressly disavow.") (internal quotation marks omitted).

Factors seven and eight are neutral. Both the state and federal actions are relatively early in the proceedings without much litigation occurring in either forum thus far. And both forums—state and federal—possess jurisdiction over the issues in this case. Moreover, factor nine cuts in favor of abstention, because removal of the state case was not an option. *See* 28 U.S.C. § 1446(a).

Finally, factor ten also counsels in favor of abstention. In *Interstate Material Corp. v. City of Chicago*, 847 F.3d 1285, 1289 (7th Cir. 1988), the Seventh Circuit found that the federal suit "could be considered both vexatious and contrived" because the plaintiff "filed both suits within seven months of each other seeking substantially the same relief from substantially the same parties." Here, the same plaintiffs filed the state and federal suits against substantially the same defendants on the *same day*, seeking "substantially the same relief" in both cases. As the Seventh

22

Circuit observed in *Interstate Material Corp.*, "we see no reason why all claims and all parties could not have been, and still could not be, part of one suit." *Id*.

As described above, the balance of the factors weighs in favor of abstention. Indeed, allowing Plaintiffs' state and federal actions to proceed concurrently would waste the parties' resources and risk duplicative or contradictory rulings. *See Tyrer*, 456 F.3d at 756-57. The issues in this case are predicated on the same set of facts and law as the state court action. In the end, there is no reason to doubt that Plaintiffs will be granted their opportunity to litigate fully and fairly their federal claim in the state court. Accordingly, this Court should abstain.

### 2. This Court should stay or dismiss the Complaint under the *Wilton-Brillhart* doctrine.

While Colorado River abstention is proper in this case, this Court may also stay or dismiss the Complaint under the *Wilton-Brillhart* abstention doctrine. In *Wilton v. Seven Falls Co.*, 515 U.S. 277, 288 (1995), and *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491 (1942), the Supreme Court held that, where concurrent state and federal actions are parallel and only declaratory relief is sought in the federal action, the district court may exercise its discretion to stay or dismiss the federal action. Under the *Wilton-Brillhart* doctrine, "district courts possess significant discretion to dismiss or stay claims seeking declaratory relief, even though they have subject matter jurisdiction over such claims." *Envision Healthcare, Inc. v. PreferredOne Ins. Co*., 604 F.3d 983, 986 (7th Cir. 2010). This discretion is granted by the Declaratory Judgment Act itself, which provides that district courts "*may* declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201(a) (emphasis added*); see also Envision Healthcare*, 604 F.3d at 986. Because of the "discretionary nature" of the Declaratory Judgement Act, "district courts have substantial discretion in deciding whether to declare the rights of litigants and may, in the sound

exercise of their discretion, stay or dismiss an action seeking a declaratory judgment in favor of an ongoing state court case." *Id*.

The Seventh Circuit has laid out four factors when deciding whether or not to exercise its jurisdiction to stay or dismiss a declaratory judgment action:

> [T]he federal court should consider (among other matters) whether the declaratory suit presents a question distinct from the issues raised in the state court proceeding, whether the parties to the two actions are identical, whether going forward with the declaratory action will serve a useful purpose in clarifying the legal obligations and relationships among the parties or will merely amount to duplicative and piecemeal litigation, and whether comparable relief is available to the plaintiff seeking a declaratory judgment in another forum or at another time.

*Med. Assur. Co. v. Hellman*, 610 F.3d 371, 379 (7th Cir. 2010), *quoting Nationwide Ins. v. Zavalis*, 52 F.3d 689, 692 (7th Cir.1995). Because all four factors weigh in favor of abstention, this Court should exercise its discretion to stay or dismiss the Plaintiffs' claims for declaratory judgment.

First, as discussed above, this case presents substantially the factual and legal issues. Plaintiffs seek the same relief in both cases, and the similarities in the cases "virtually guarantee that both cases can be resolved by examining much of the same evidence." *Ironshore Indem., Inc. v. Synergy Law Grp., LLC*, 926 F. Supp. 2d 1005, 1013 (N.D. Ill. 2013), *citing Huon*, 657 F.3d at 647. Second, the two cases involve substantially the same parties, and the plaintiffs are identical in each case. *Compare* Dkt. 1 ¶¶ 6-15 with Ex. A ¶¶ 4-13. Thus, every plaintiff "in *this* case will have the opportunity to litigate the same claims in another forum. *Ironshore Indem.*, 926 F. Supp. 2d at 1013.

Third, as discussed above, allowing this case to move forward will result in duplicative or piecemeal litigation. Both cases involve the "same underlying set of facts" and challenge the same provision of the Illinois School Code. *Id.* Finally, Plaintiffs could bring all their federal constitutional and statutory claims in the state action, and may receive similar relief if they succeed

24

on those claims. Even aside from consideration of the factors, this case is a "classic example" of when abstention is proper, when "solely declaratory relief is sought and parallel state proceedings are ongoing." *Envision Healthcare*, 604 F.3d at 986. Accordingly, this Court should exercise its discretion to stay or dismiss this action.

## II.   Plaintiffs' Motion for a Preliminary Injunction Should Be Denied.

A preliminary injunction is "an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (emphasis in original); *see also Boucher v. Sch. Bd. of Sch. Dist. of Greenfield*, 134 F.3d 821, 823 (7th Cir. 1998) (same); *Roland Mach. Co. v. Dresser Indus.*, 749 F.2d 380, 389 (7th Cir. 1984). To obtain a preliminary injunction, a plaintiff must establish that: (1) he is likely to succeed on the merits; (2) he is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in his favor; and (4) an injunction is in the public interest." *Winter v. Natural Res. Def. Council*, 555 U.S. 7, 20 (2008); *Judge v. Quinn*, 612 F.3d 537, 546 (7th Cir. 2010). The court "must balance the competing claims of injury and must consider the effect on each party of granting or withholding the requested relief," paying "particular regard for the public consequences in employing the extraordinary remedy of injunction." *Winter*, 555 U.S. at 24.

Here, Plaintiffs' burden is even greater than usual because, rather than seeking to preserve the status quo, they seek *mandatory* interim relief directing Defendants to draft procedures for an election to be held April 4, 2017. Mandatory injunctions are "rarely issued," interlocutory mandatory injunctions are "even more rarely issued," and neither should be issued "except upon the clearest equitable grounds."[3] *W.A. Mack, Inc. v. Gen. Motors Corp.*, 260 F.3d 886, 890 (7th Cir. 1958); *see also Graham v. Med. Mut. of Ohio*, 130 F.3d 293, 295 (7th Cir. 1997) ("[M]andatory preliminary writs are

ordinarily cautiously viewed and sparingly issued."); *Chicago United Indus. v. City of Chicago*, 445 F.3d 940, 945-46 (7th Cir. 2006).

### A.  Plaintiffs Have Little Chance of Success on the Merits of Their Claims.

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits." *Winter*, 555 U.S. at 20. To meet their initial burden, Plaintiffs must show that they have a "better than negligible" chance of success on the merits. *Roland Mach. Co*., 749 F.2d at 387. Where it is more likely than not that a defendant will prevail, injunctive relief is improper, particularly where the balance of harms tips decidedly in favor of the defendant. *See Boucher*, 134 F.3d at 826-27, 829 (vacating preliminary injunction as to expelled high school student). Even if a plaintiff makes the required showing, however, the court must determine how likely it is that the plaintiff actually will succeed: "The more likely the plaintiff is to win, the less heavily need the balance of harms weigh in his favor; the less likely he is to win, the more need it weigh in his favor." *Roland Mach. Co*., 749 F.2d at 387. Moreover, when there are "two equally credible versions of the facts the court should be highly cautious in granting an injunction without the benefit of a full trial." *Lawson Prods., Inc. v. Avnet, Inc.*, 782 F.2d 1429, 1440 (7th Cir. 1986) (citation omitted).

For the reasons explained above in support of the State Defendants' Motion to Dismiss, Plaintiffs fail to establish a likelihood of success on the merits of their claims. Furthermore, Plaintiffs' reliance on *Jackson v. Ogilvie*, 426 F. 2d 1333, 1337 (7th Cir. 1970) and *Judge v. Quinn*, 612 F. 3d 537, 556-57 (7th Cir. 2010) is misplaced, as these cases are factually distinguishable from this case. In both of those Seventh Circuit cases, emergency injunctive relief was granted ordering the governor to call a special election to fill a vacancy in either the U.S. House of Representatives or U.S. Senate. The people have a right to elect their federal legislators. School

26

board members, however, are not non-legislative, administrative officers, and as discussed above, there exists no right to elect school board members.

Because Plaintiffs have little chance of success on the merits, the balance of harms must weigh very heavily in their favor. However, as discussed below, the balance of harms actually weighs *against* granting a preliminary injunction.

### B. Plaintiffs Have Not Demonstrated Irreparable Harm to Warrant a Preliminary Injunction.

Plaintiffs' motion should be denied because they cannot establish irreparable harm if preliminary injunctive relief is not granted. *Winter*, 555 U.S. at 2 ("possibility" of irreparable harm is not enough; Plaintiffs must "demonstrate that irreparable injury is *likely* in the absence of an injunction") (emphasis in original). Plaintiffs cannot satisfy this requirement. In this case, Plaintiffs challenge a statute that has been in existence for over 20 years. And more importantly, Plaintiffs concede that Chicago Board members have never been elected by Chicago citizens. The *status quo*, 'the last uncontested status which preceded the pending controversy'" (*Westinghouse Elec. Corp. v. Free Sewing Mach. Co.*, 256 F.2d 806, 808 (7th Cir. 1958)), is that the Chicago Board of Education is not elected. Thus, Plaintiffs simply cannot argue that they will suffer irreparable harm if their preliminary injunction seeking mandatory injunctive relief is not granted.

Even after filing this lawsuit, Plaintiffs waited eight weeks before filing this motion for preliminary injunction. Plaintiffs' lengthy delay in challenging this statute and in moving for a preliminary injunction "undercuts [their] claims of irreparable harm" and "may be considered as circumstantial evidence that the potential harm to [Plaintiffs] is not irreparable or as great as claimed." *Fenje v. Feld*, No. 01 C 9684, 2002 WL 1160158, at *2 (N.D. Ill. May 29, 2002); *see also Shady v. Tyson*, 5 F. Supp. 2d 102, 108-09 (E.D.N.Y. 1998). Their delay further confirms that they cannot establish irreparable harm.

27

Plaintiffs also cannot demonstrate irreparable harm because the General Assembly is currently considering a legislative bill which, if passed, will adequately address Plaintiffs' concerns.

### C. The Harm to Defendants and the Public if an Injunction Issues Outweighs Any Interim Harm to Plaintiffs Absent an Injunction.

Under the "balance of harms" portion of the analysis, Plaintiffs must establish that "the harm they would suffer without the injunction is greater than the harm that preliminary relief would inflict on the defendants." *Mich. v. U.S. Army Corps of Eng'g*, 667 F.3d 765, 769 (7th Cir. 2011). Because a movant need not establish that it is more likely than not that they will succeed on the merits to obtain injunctive relief, a movant "must compensate for the lesser likelihood of prevailing by showing the balance of harms tips *decidedly* in favor of the movant." *Boucher*, 134 F.3d at 826 n.5 (emphasis in original). The court also should consider whether a preliminary injunction would cause harm to the public interest. *Platinum Home Mort. Corp. v. Platinum Fin. Group, Inc.*, 149 F.3d 722, 726 (7th Cir. 1998).

In this case, the State will suffer significant hardship if it is ordered to "draft procedures for an election on April 4, 2017." Given that the challenged statute has been in effect for over 20 years, there is absolutely no sense of urgency. And requiring the State to draft procedures for an April 2017 election, where it is very likely that Plaintiffs will not succeed on the merits of their claims, will certainly interfere with the State's operations in other areas of government which require immediate action and attention, and thus will harm the public. This harm to the public is especially pronounced given that it is utterly unrealistic to order an election to be held in April 2017. Therefore, the balance of hardships does not weigh in favor of granting preliminary injunctive relief.

**D. Plaintiffs' Request to Advance the Trial on the Merits under Rule 65(a)(2) Should Also Be Denied.**

As an alternative to their motion for a preliminary injunction, Plaintiffs also request that this Court advance a trial on the merits of their Equal Protection/First Amendment claim and their disparate impact Voting Rights Act claim, on the grounds that these claims "raise primarily questions of law." Dkt. 33 at 2. But while, as discussed above, Plaintiffs' claims should be dismissed for failure to state a claim, a trial on these same claims would involve numerous disputed factual issues. Plaintiffs' own motion for a preliminary injunction attaches 143 pages of exhibits, including numerous statistics. *See* Dkt. 33-1 through 33-16. Before a trial on the merits, Defendants would be entitled to conduct discovery to test Plaintiffs' factual assertions and to introduce additional evidence, including expert testimony. *See, e.g.*, *McQueen v. City of Chicago*, No. 09 C 2048, 2014 WL 1715439, at * 5 (N.D. Ill. Apr. 30, 2014) (statistical evidence is needed to support a disparate impact claim). Additionally, it would be a waste of judicial resources to resolve only two of Plaintiffs' claims when Plaintiffs' other claims would remain. A quick trial on the merits would thus be both improper and improvident.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Honorable Court grant Defendants' Motion to Dismiss Plaintiffs' Complaint with prejudice and deny Plaintiffs' Motion for Preliminary Injunction.

LISA MADIGAN
Attorney General of Illinois                                      /s/ *Sarah H. Newman* _____

Attorney No. 99000                              By:     Sarah H. Newman
                                                        Amy M. McCarthy
                                                        Assistant Attorneys General
                                                        General Law Bureau
                                                        100 W. Randolph St., 13th Fl.
                                                        Chicago, Illinois 60601
                                                        312-814-6131 / 312-814-1187
                                                        snewman@atg.state.il.us
                                                        amccarthy@atg.state.il.us


## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that the foregoing motion was filed through the Court's CM/ECF system on December 19, 2016. Parties of record may obtain a copy through the Court's CM/ECF system. The undersigned certifies that no party of record requires service of documents through any means other than the CM/ECF system.

/s/ *Sarah H. Newman*

30