IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| PATRICK QUINN, *et al.,* <br><br> Plaintiffs, <br><br> v. <br><br> BOARD OF EDUCATION OF THE CITY OF CHICAGO, *et al.*, <br><br> Defendants. | Case No. 2016-cv- 9514 <br><br> Judge Elaine E. Bucklo <br> Magistrate Judge Sheila Finnegan |

## BOARD OF EDUCATION OF THE CITY OF CHICAGO'S MOTION TO DISMISS

Dated: December 19, 2016

Respectfully Submitted,

CHICAGO BOARD OF EDUCATION

By:   */s/ Stephen H. Pugh*
       One of Its Attorneys
       Pugh, Jones & Johnson, P.C.
       180 North LaSalle Street, Suite 3400
       Chicago, Illinois 60601
       Telephone: (312) 768-7800
       Facsimile: (312) 768-7801

**TABLE OF CONTENTS**

Table of Contents ............................................................................................................................. i

Table of Authorities ……………………………………………………………………………… ii

Introduction ..................................................................................................................................... 1

Background ..................................................................................................................................... 2

Argument ........................................................................................................................................ 3

    I.    Legal Standard For A Motion To Dismiss Pursuant To Rule 12(b)(6) .............................. 3

    II.    Counts I, III, And IV Should Be Dismissed Because There Is No "Right" To An Elected School Board ....................................................................................................................... 3

            A.  Under Federal Law, There Is No "Right" To An Elected School Board ............... 3

            B.  Under Illinois Law, There Is No "Right" To An Elected School Board ............... 7

    III.    Count II Fails To State A Deprivation Of Due Process ...................................................... 9

    IV.    Plaintiffs Do Not Have Standing To Sue .......................................................................... 11

Conclusion .................................................................................................................................... 11

## TABLE OF AUTHORITIES

**Cases**

*People v. Deatherage*,
  401 Ill. 25 (1948) ............................................................................................................... 7, 8

*African-American Cit. v. Robbins*,
  825 F. Supp. 885 (1993), *aff'd*, 24 F.3d 1052 ........................................................................ 5

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) .................................................................................................................. 3

*Bd. of Educ. of Princeton v. Bd. of Educ. of Wyanet.*,
  314 Ill. 83 (1924).................................................................................................................... 9

*Bradley v. Indiana State Elec. Bd.*,
  797 F. Supp. 694 (S.D. Ind. 1992) ........................................................................................ 5

*Chisom v. Roemer*,
  501 U.S. 380 (1991) ................................................................................................................ 5

*Dillard v. Crenshaw Cty.*,
  831 F.2d 246 (11th Cir. 1987).............................................................................................. 5

*Fumarolo v. Bd. of Education*,
  142 Ill. 2d 54 (1990).......................................................................................................... 2, 8

*Hadley v. Junior College District*,
  397 U.S. 50 (1970) .................................................................................................................. 7

*Holley v. Roanoke*,
  162 F. Supp. 2d 1335 (M.D. Ala. 2001)............................................................................. 4

*Irby v. Va. State Bd. of Elections*,
  889 F.2d 1352 (4th Cir. 1989)............................................................................................. 4

*Latham v. Bd. of Ed. of City of Chi.*,
  31 Ill. 2d 178 (1964)......................................................................................................... 7, 10

*Lujan v. Def. of Wildlife*,
  504 U.S. 555 (1992) .............................................................................................................. 11

*Mixon v. State of Ohio*,
  193 F.3d 389 (6th Cir. 1999)............................................................................................ 4, 6

*Moore v. Sch. Reform Bd. of Detroit,*
   147 F. Supp. 2d 679 (E.D. Mich. 2000), *aff'd,* 293 F.3d 352 (6th Cir. 2001) ............................. 4

*Mungia v. Illinois,*
   2010 WL 3172740 (N.D. Il. 2010) ........................................................................................ 11

*Prewitt v. Moore,*
   840 F. Supp. 436 (N.D. Miss. 1993) ...................................................................................... 5

*Puffer-Hefty Sch. Dist. v. Du Page Reg'l Bd. of Sch. Trs. of Du Page Cty.,*
   339 Ill. App. 3d 194 (2nd Dist. 2003) .................................................................................... 8

*Sailors v. Bd. of Ed. of Kent Cty.,*
   387 U.S. 105 (1967) ........................................................................................................... 3, 9

*Silha v. ACT, Inc.,*
   807 F.3d 169 (7th Cir. 2015) .................................................................................................. 3

*Spaulding v. Illinois Cnty.,*
   64 Ill. 2d 449 (1976) .............................................................................................................. 7

*Thornburg v. Gingles,*
   478 U.S. 30 (1986) ................................................................................................................ 6

*Tully v. Edgar,*
   171 Ill. 2d 297 (1996) ............................................................................................................ 9

*Welch v. Bd. of Edu. of Balt. Cnty.,*
   477 F. Supp. 959 (D. Md. 1979) ........................................................................................... 4

*Williams v. State Bd. of Elec.,*
   696 F. Supp. 1563 (N.D. Ill.1988) ......................................................................................... 5

**Statutes**

105 ILCS 5/34-2.1 ........................................................................................................................ 2

105 ILCS 5/34-3 ................................................................................................................. *passim*

105 ILCS 5/34-53 ...................................................................................................................... 10

52 U.S.C. §10301(a) ........................................................................................................... *passim*

**Rules**

Rule 8(a)(2) ................................................................................................................................. 3

Rule 12(b)(6) .................................................................................................................... 1, 3, 11

Rule 12(b)(1) .................................................................................................................... 1, 11

**Other Authorities**

89th Gen. Assem. Sen., May 4, 1995 ....................................................................................... 2

S. Rep. 97-417 ......................................................................................................................... 6

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| PATRICK QUINN, *et al.,* <br><br> Plaintiffs, <br><br> v. <br><br> BOARD OF EDUCATION OF THE CITY OF CHICAGO, *et al.*, <br><br> Defendants. | Case No. 2016-cv-9514 <br><br> Judge Elaine E. Bucklo <br><br> Magistrate Judge Sheila Finnegan |

**BOARD OF EDUCATION OF THE CITY OF CHICAGO'S MOTION TO DISMISS**

Defendant Board of Education of the City of Chicago (the "Board"), moves this Court pursuant to Rule 12(b)(6) and Rule 12(b)(1) of the Federal Rules of Civil Procedure, for an order dismissing the Plaintiffs' Complaint, and in support thereof, states as follows:

**Introduction**

This action concerns various legal challenges to 105 ILCS 5/34-3 of the Illinois School Code ("§34-3"). The Plaintiffs assert that the Mayor of Chicago's statutory authority to appoint members of the Board violates their constitutional rights and that §34-3 is discriminatory. In Count I, Plaintiffs claim that §34-3 deprives them of equal protection because they cannot vote for members of the Board unlike other Illinois citizens who have the right to vote for their local school boards. Count II alleges that paying taxes for Chicago's schools violates due process. Count III contends that §34-3 violates the Voting Rights Act. Lastly, Count IV claims that §34-3 violates the Civil Rights Act and the U.S. Constitution.

1

The Complaint is hopelessly deficient and should be dismissed. As courts have held, there is no "right" to vote for a school board under federal law or Illinois law. The Complaint fails to state a claim and therefore should be dismissed.

## **Background**

The Mayor of the City of Chicago always has appointed members of the Board so Chicago residents have never had the right of a referendum to vote for members of the school board. In the last 30 years, there have been two significant legislative changes pertinent to Plaintiffs' claims but the General Assembly has consistently decided that the Board members remain appointed rather than elected.

In 1988, Illinois adopted the Chicago School Reform Act of 1988, which established elected Local School Councils ("LSC"). *See* 105 ILCS 5/34-2.1 (1988). Each LSC was to be comprised of school staff members, parents, and members of the community. *Id.* LSCs remain today, although the manner of their election has changed. In 1990, in *Fumarolo v. Bd. of Education*, 142 Ill. 2d 54 (1990) the Illinois Supreme Court struck down the statute's system of unequal weights of votes by parents, staff, and community residents within a single attendance center. No portion of *Fumarolo* addressed the Mayor's ability to appoint members of the Board. After *Fumarolo*, the General Assembly amended the statute to provide all voters with an equal number of votes. *See* 105 ILCS 5/34-2.1 (d)(i-vii).

In 1995, the General Assembly vested in the Mayor the sole power to appoint members of the Board by dissolving the School Board Nominating Commission which previously proposed candidates for the Board. The General Assembly amended §34-3 to make sure the Board was "fully appointed []and appointed on a regular basis." 89th Gen. Assem. Sen., May 4, 1995, at p. 136.

**Argument**

I.  **Legal Standard For A Motion To Dismiss Pursuant To Rule 12(b)(6).**

Under *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009) and Rule 8(a)(2) of the Federal Rules of Civil Procedure, a pleading must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the [plaintiff has pleaded his case]." *Id.* at 677-78; *Silha v. ACT, Inc.*, 807 F.3d 169, 173-74 (7th Cir. 2015).

II.  **Counts I, III, And IV Should Be Dismissed Because There Is No "Right" To An Elected School Board.**

Count I asserts a denial of equal protection based upon the Plaintiffs' claim that as Chicago residents they are denied the "right" to vote for members of the Board. ECF #1 at ¶¶95-96. Count III asserts a violation of Section 2 of the Voting Rights Act because, according to the Plaintiffs, §34-3 denies a higher percentage of minorities in the state the right to vote for a school board. ECF# 1 at ¶¶104-09. Count IV asserts a violation of the Fourteenth and Fifteenth Amendments because, according to Plaintiffs, they are denied a "right" to vote for the Board. ECF# 1 at ¶¶130. All of Plaintiffs' claims rest upon the threshold proposition that the Plaintiffs have a "right" to an elected school board and, therefore, they have a right to vote in an election for the Board. Plaintiffs' claims are fatally defective as a matter of law because under both federal and Illinois law, there is no "right" to an elected school board.

    A.  Under Federal Law, There Is No "Right" To An Elected School Board.

In *Sailors v. Bd. of Ed. of Kent Cty.*, 387 U.S. 105, 108 (1967), the U.S. Supreme Court rejected a constitutional challenge to Kent County's appointed Board of Education. The Court ruled that "[w]e find no constitutional reason why [the Board of Education of Kent County] may not be chosen by the governor, by the legislature, or by some other appointive means rather than

3

by an election." *Id.* The Court went on to explain, "[a]t least as respects non-legislative officers, a State can appoint local officials or elect them or combine the elective and appointive systems as was done here." *Id.* at 111. The Supreme Court's ruling controls here and is fatal to the Plaintiffs' claims.

The core of the Board's argument—that there is no "right" to an elected school board—applies even when some parts of a state appoint school boards and other parts of a state elect school boards. *See, e.g.*, *Mixon v. State of Ohio*, 193 F.3d 389, 403 (6th Cir. 1999) (collecting cases and noting that "there is no fundamental right to elect an administrative body such as a school board, even if other cities in the state may do so," and observing that "appointed school boards may provide significant benefits in a State's attempt to improve local schools"); *Welch v. Bd. of Edu. of Balt. Cnty.*, 477 F. Supp. 959 (D. Md. 1979) (upholding Maryland statute providing for appointed school board in only some counties while others are elected); *Irby v. Va. State Bd. of Elections*, 889 F.2d 1352, 1357 (4th Cir. 1989) (rejecting argument that Virginia's appointive system of school boards violated Section 2 of the Voting Rights Act); *Holley v. Roanoke*, 162 F. Supp. 2d 1335, 1339-40 (M.D. Ala. 2001) (rejecting challenge in appointments of board of education because "Act applied only to those systems in which officials were chosen through election," even though practice "resulted in diminution of African-American voting power"); *Moore v. Sch. Reform Bd. of Detroit*, 147 F. Supp. 2d 679 (E.D. Mich. 2000) ("Section 2 of the Voting Rights Act does not apply to appointed processes" of Detroit's school board), *aff'd,* 293 F.3d 352 (6th Cir. 2001).

Because there is no "right" to vote for a school board, the Plaintiffs' claims in Count III, which rely upon the Voting Rights Act, must be dismissed. Simply put, the Act protects an <u>existing</u> right to vote, but it cannot be distorted to create a "right" where such does not exist under the law.

4

This is supported by the text of 52 U.S.C. §10301(a), which conditions the applicability of the Act upon a "denial or abridgement of <u>the right</u> of any citizen of the United States to vote on account of race or color." (emphasis added).

The U.S. Supreme Court and the Northern District Court of Illinois have ruled that the Act does not apply to appointed offices. See *Chisom v. Roemer*, 501 U.S. 380, 401 (1991) ("Louisiana could, of course, exclude its judiciary from the coverage of the Voting Rights Act by changing to a system in which judges are appointed"); *Williams v. State Bd. of Elec.*, 696 F. Supp. 1563, 1568–69 (N.D. Ill. 1988) (rejecting Voting Rights Claim reasoning that "plaintiffs cannot challenge the appointment of Associate Circuit Court judges" because they "are appointed officials" under applicable law.)

Other federal courts also have recognized that the Act does not apply when state law does not provide for elections and when challenging laws calling for appointed officials. *African-American Cit. v. Robbins*, 825 F. Supp. 885, 887 (1993), *aff'd*, 24 F.3d 1052, 1053 (8th Cir. 1994) ("Section 2 of the Voting Rights Act is inapplicable" because "Missouri has chosen an appointive system over an elective scheme for selecting members to the Police Board."); *Dillard v. Crenshaw Cty.*, 831 F.2d 246, 251 n. 12 (11th Cir. 1987) (an "unelected position would not be subject to the Voting Rights Act."); *Bradley v. Indiana State Elec. Bd.,* 797 F. Supp. 694, 698 (S.D. Ind. 1992) (Act did not apply to judicial appointments). This is true even in cases where laws calling for appointments deprive a racial group of influence. *Robbins*, 24 F.3d at 1054. (Voting Rights Act did not apply, even though "[i]t is no doubt true…that all St. Louis voters, including the City's African–American voters, have less influence over local police affairs…"); *Prewitt v. Moore*, 840 F. Supp. 436, 437 (N.D. Miss. 1993) (no violation in appointed judicial officers despite argument that statute "diminishes the voting power of black Mississippians"). Therefore, there can be no

violation of the Voting Rights Act here because the Plaintiffs do not possess an underlying "right" to vote for the Board.

Count III also fails because there can be no causal connection between §34-3 and any voting "right." Prevailing in a Voting Rights Act challenge requires showing that the legislation is causally connected to an impairment of voting rights. *Thornburg v. Gingles*, 478 U.S. 30, 47-48 (1986). In this case, there is no plausible causal connection between §34-3 and the denial of any purported right—the Plaintiffs admit that they <u>never</u> possessed, before the amendment of §34-3, the very voting ability they seek to vindicate. They cannot plausibly argue that §34-3 deprived them of a "right" they never had in the first place. There is no causal connection here.

Plaintiffs' response to this stark line of authority relies upon rhetorical flourish, branding *Mixon* as "spectacularly wrong." Pl. Memo in Supp. of its Mtn. for Prel. Inj. at p. 23, (ECF # 26-1). *Mixon* concerned an Ohio statute which empowered Cleveland's mayor to appoint the city's school board. Like the Plaintiffs here, the *Mixon* plaintiffs contended that the statute violated their equal protection rights and the Voting Rights Act because the Ohio statute did not permit Cleveland's minority residents to vote on school boards, whereas other Ohio voters could. *Id.* The *Mixon* court reasoned that the Voting Rights Act did not apply because Section 2 "covers only the election and nomination of representatives, not the appointment processes." *Id.* at 407. (emphasis omitted). Furthermore, legislative history revealed "no strong evidence that Congress intended for Section 2 to provide a basis for challenging appointive systems." *Id.* at 408 (citing S. Rep. 97-417 at 6 (1982)). *Mixon* makes clear that there is no violation of the Voting Rights Act "even if other cities in the state may [vote for their school boards]." *Id.* at 403. In this case, the Plaintiffs advance nearly identical claims as in *Mixon*—and like *Mixon*—these arguments lack merit.

6

Plaintiffs miss the mark when they rely upon *Hadley v. Junior College District*, 397 U.S. 50 (1970). In *Hadley,* plaintiffs challenged a Missouri statute that they contended diluted their right to vote. The statute allowed Kansas City residents to elect only half of the members of a community college board, despite the fact that the citizens represented 60% of those students in the district. *Id.* at 51. The Supreme Court held that the allocation diluted the voting power of voters in large school districts and failed to guarantee "equal voting strength for each voter" when compared to other voters electing members of community college boards. *Id.* at 52, 59. Here, §34-3 does not dilute any person's voting power statewide or within the City of Chicago for the simple reason that there is no election.

B. <u>Under Illinois Law, There Is No "Right" To An Elected School Board.</u>

In *People v. Deatherage*, the Illinois Supreme Court ruled that "no resident of a school district has an inherent right of franchise insofar as school elections are concerned. His right to vote therein is purely a permissive one bestowed by legislative grace in furtherance of the policy of the legislature." 401 Ill. 25, 35 (1948). Simply put, the Illinois Constitution "does not guarantee that every person with a patent interest in the outcome of a school election has, because of that interest, a right to vote therein." *Id.*; *Spaulding v. Illinois Cnty.*, 64 Ill. 2d 449, 456 (1976) (holding that state legislature "may constitutionally establish or alter school districts without any local referendum.")

In *Latham v. Bd. of Ed. of City of Chi.*, 31 Ill. 2d 178 (1964), the Illinois Supreme Court rejected the plaintiffs' claim that their equal protection rights were violated because §34 purportedly "deprives them of the right to vote for members of the Board of Education which franchise is given residents of smaller districts." *Id.* at 185. The Illinois Supreme Court reasoned that §34-3 was a valid exercise of the legislature's constitutional authority. *Id.* Relying on

7

*Deatherage*, the Illinois Supreme Court concluded that voting for Chicago's school board was only a "purely permissive [ability] bestowed by legislative grace in furtherance of the policy of the legislature." *Id.* at 186; *see also Puffer-Hefty Sch. Dist. v. Du Page Reg'l Bd. of Sch. Trs. of Du Page Cty.*, 339 Ill. App. 3d 194 (2nd Dist. 2003) (rejecting plaintiffs' equal protection challenge concerning a board's annexation of a territory because they were prevented from participating in an election).

Against the great weight of authority, Plaintiffs' memorandum (ECF #26-1) principally relies upon two cases that involve much different claims. In *Fumarolo*, the issue concerned the 1988 amendment's creation of "different voting powers, *i.e.*, votes of unequal weight" when selecting members of LSCs. 142 Ill. 2d at 73. At that time, the amendment called for "certain classes of voters [with] a clearly reduced vote" in a single election within a single school "attendance center" depending on whether voters were parents, school staff, or simply community residents. *Id.* at 71, 93. Voters who were parents of students enjoyed a "substantially weighted" vote by being able to vote for six members of the LSC, whereas their neighbors who did not have children enrolled at the school could not vote for the same number, and fewer votes were allocated for school staff. *Id.* at 71. The Court reasoned that providing differently weighted votes within a single election for a single attendance center resulted in an "inequality in voting power" that violated the "one person, one vote" standard. *Id.* at 73-74.

Unlike *Fumarolo*, §34-3 provides for a board appointed by the Mayor of the City of Chicago. Section 34-3 does not provide different weighted votes for people voting within a single election. Here, §34-3 treats all Chicago residents equally in that it simply does not provide a referendum to select board members.

Plaintiffs' reliance on *Tully v. Edgar*, 171 Ill. 2d 297 (1996) is also misplaced. In *Tully*, trustees were elected to serve six year terms; after their election, a statutory amendment removed the elected trustees and changed the offices to appointed positions. *Id.* at 300-01. In doing so, the amendment curtailed the trustees' term and operated as a "post-hoc" negation of the election by removing a trustee before the conclusion of the elected term. *Id.* The Supreme Court reasoned that the amendment "eviscerates the election process by providing that, even though the trustees [were elected], they are prohibited from holding office for the terms to which they were elected." *Id.* at 306. Plaintiffs' claim here has nothing to do with removing elected school board members before their terms have expired and replacing them with appointed members.

Therefore, Plaintiffs' claims here must be dismissed because there is no "right" to an elected school board.

### III. Count II Fails To State A Deprivation Of Due Process.

Count II asserts that §34-3 violates the Plaintiffs' due process rights because it allows the Board to levy a tax "without any accountability to a legislative body or body of elected officials or the citizens upon whom the tax is imposed." ECF #1 at ¶ 97; 101. Count II should be dismissed because there is no due process violation when an appointed educational board levies taxes. In *Sailors v. Bd. of Ed. of Kent Cty.*, the U.S. Supreme Court rejected a challenge to an appointed education board having powers that included "preparation of an annual budget and levy of taxes . . ." 387 U.S. at 110, n.7.

The Illinois Supreme Court likewise has rejected the argument that a school board cannot levy taxes. *Bd. of Educ. of Princeton v. Bd. of Educ. of Wyanet.*, 314 Ill. 83, 87 (1924) (rejecting constitutional due process challenge to school board's taxing authority noting that taxes for board

9

of education are "collected for the purpose of providing a statewide system of thorough and efficient free schools, and these taxes...are subject to the will of the Legislature.").

Indeed, in *Latham*, the Illinois Supreme Court rejected a nearly identical due process challenge to the taxing authority of Chicago's school board. Much like Plaintiffs here, the *Latham* plaintiffs argued that the School Code arbitrarily delegated the legislative power to tax, and that this "power to tax so delegated deprives plaintiffs of their property without due process." 31 Ill. 2d 178 at 186. The Illinois Supreme Court rejected the claim, holding that "the power of the legislature to create public corporations is practically unlimited. It may create any conceivable kind of a corporation it sees fit for the more efficient administration of public affairs and endow such corporation with such powers and functions as it deems necessary and proper for the administration of such corporate powers and affairs." *Id.* at 186-87. Therefore, the school board's taxing authority was a lawful delegation of the General Assembly's constitutional taxing powers. *Id.*

Plaintiffs seek to limit *Latham*, arguing that that when the Illinois Supreme Court decided *Latham* in 1964, the Mayor did not have the sole power to appoint the Board. Chicago's City Council had a different role in 1964. Plaintiffs, however, cannot escape the Illinois Supreme Court's holding that the legislature has "practically unlimited" power to create any kind of public corporation, that the legislature properly could delegate taxing authority to the Board, and that the legislature retained control over the Board's taxing authority by imposing statutory restrictions on the Board's ability to tax. Indeed, the Board's taxing authority remains curtailed by the General Assembly pursuant to 105 ILCS 5/34-53, which limits who, what, and how much may be taxed by the Board. This statute limits only those taxes for an "educational purpose" and limits any increase to "a rate of not to exceed the sum of 3.07%."

10

There is no due process violation alleged in Count II.

**IV.   The Plaintiffs Do Not Have Standing To Sue.**

In addition to the failure to state a claim, the Complaint should be dismissed because the Plaintiffs lack standing.[1] A complaint that fails to set forth a factual and legal basis for standing is subject to dismissal pursuant to Rule 12(b)(1). A plaintiff bears the burden of establishing standing. *Lujan v. Def. of Wildlife*, 504 U.S. 555 (1992). Establishing standing requires that a litigant first set forth an "injury in fact" to a legally-protected interest. *Id.* at 560. Here, the Plaintiffs do not establish standing because, as articulated above, they possess no "right" to an elected school board. Therefore, their complaints with respect to the inability to vote for the same cannot plausibly relate to any legally protected interest. This matter should be dismissed.

## Conclusion

WHEREFORE, Defendant Board of Education of the City of Chicago, respectfully requests that this Court enter an order dismissing the Complaint with prejudice and for any other relief this Honorable Court deems appropriate.

Dated: December 19, 2016                         Respectfully submitted,

                                                 BOARD OF EDUCATION OF THE CITY OF CHICAGO

                                         By:     */s/ Stephen H. Pugh*
                                                 One of Its Attorneys
                                                 Pugh, Jones & Johnson, P.C.
                                                 180 North LaSalle Street, Suite 3400
                                                 Chicago, Illinois 60601
                                                 Telephone: (312) 768-7800
                                                 Facsimile: (312) 768-7801

---

[1] While standing often is considered before a substantive analysis of the merits of each claim, it can also be appropriate to examine standing after arguing that a litigant has failed to state a claim under Rule 12(b)(6). *Mungia v. Illinois*, 2010 WL 3172740, at 12 (N.D. Il. 2010) (noting that standing need not be analyzed before a substantive analysis of the claims, "because Plaintiffs in this case have failed to state a claim upon which relief may be granted,…").

11

## **CERTIFICATE OF SERVICE**

I, Stephen H. Pugh, an attorney, certify that I caused a copy of the foregoing ***Board of Education of the City of Chicago's Motion to Dismiss*** to be served upon the below-listed individual(s), by depositing the same in the U.S. Mail box at 180 North LaSalle Street, Chicago, Illinois 60601, postage prepaid, same-day personal delivery by messenger, FedEx overnight delivery, facsimile transmitted from (312) 768-7801, electronic mail, or Case Management/Electronic Case Filing System ("CM/ECF"), as indicated below, on December 19, 2016.

|  |  |
|---|---|
| ☒ CM/ECF<br>☐ Facsimile/____ Pages<br>☐ Federal Express<br>☐ U.S. Mail<br>☐ Messenger<br>☐ Electronic mail | ***Attorneys for Plaintiffs***<br>Sean Morales-Doyle<br>Despres, Schwartz & Geoghegan, Ltd.<br>77 West Washington Street<br>Suite 711<br>Chicago, Illinois 60602<br>(312) 372-2511 |

By: /s/ *Stephen H. Pugh* _____