IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| PATRICK QUINN, *et al.,* <br><br> Plaintiffs, <br><br> v. <br><br> BOARD OF EDUCATION OF THE CITY OF CHICAGO, *et al.*, <br><br> Defendants. | Case No. 2016-cv- 9514 <br><br> Judge Elaine E. Bucklo <br><br> Magistrate Judge Sheila Finnegan |

**BOARD OF EDUCATION OF THE CITY OF CHICAGO'S RESPONSE TO
PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION**

Dated: December 19, 2016        Respectfully Submitted,

CHICAGO BOARD OF EDUCATION

By:     /s/ *Stephen H. Pugh*
        One of Its Attorneys
        Pugh, Jones & Johnson, P.C.
        180 North LaSalle Street, Suite 3400
        Chicago, Illinois 60601
        Telephone: (312) 768-7800
        Facsimile: (312) 768-7801

# TABLE OF CONTENTS

Table of Contents ........................................................................................................................... i

Table of Authorities ..................................................................................................................... ii

Introduction ................................................................................................................................... 1

Argument ....................................................................................................................................... 3

    I.    Legal Standard for Granting a Preliminary Injunction ....................................................... 3

    II.    The Plaintiffs Cannot Establish They Are Entitled To An Injunction ............................... 3

    III.    The Plaintiffs Cannot Establish A Likelihood Of Success On The Merits........................ 4

        A.    There Is No Likelihood Of Success On The Merits Based Upon Count I Because There Is No "Right" To Vote For A School Board Under Federal Or Illinois Law.... 4

        B.    There Is No Likelihood Of Success On The Merits Based Upon Count III Because The Voting Rights Act Cannot Apply When There Is No "Right" To Vote For A School Board ................................................................................................................... 6

        C.    Plaintiffs' Case Law Is Not Persuasive ......................................................................... 8

    IV.    There Is No Irreparable Harm Or Inadequate Remedy At Law Because The Plaintiffs Do Not Have An Underlying "Right" To Vote For A School Board ...................................... 9

    V.    The Balance Of The Harms Favors Not Granting an Injunction ..................................... 10

    VI.    Prudential Standing And Rule 65 Make Clear That The Requested Injunction Cannot Be Granted.............................................................................................................................. 11

Conclusion .................................................................................................................................. 12

# **TABLE OF AUTHORITIES**

**Cases** **Pages**

*African-American Cit. v. Robbins*,
   825 F. Supp. 885 (1993), *aff'd*, 24 F.3d 1052 (8th Cir. 1994)............................7

*Bradley v. Indiana State Elec. Bd.*,
   797 F. Supp. 694 (S.D. Ind. 1992)..........................................................................7

*Chicago Dist. Council of Carp. Pension Fund v. K & I Constr., Inc.*,
   270 F.3d 1060, (7th Cir. 2001) ...............................................................................3

*Chisom v. Roemer*,
   501 U.S. 380 (1991)................................................................................................7

*Dillard v. Crenshaw County*,
   831 F.2d 246, 251, n. 12 (11th Cir. 1987) ..............................................................7

*Ditton v. Rusch*,
   2014 WL 4435928 (N.D. Ill. 2014) ........................................................................9

*Ed. Comm., Inc. v. Universal Who's Who Pub., Inc.*,
   1999 WL 618099 (N.D. Il. 1999) .........................................................................12

*Ezell v. City of Chicago*,
   651 F.3d 684 (7th Cir. 2011) ...........................................................................4, 10

*Graham v. Med. Mut. of Ohio*,
   130 F.3d 293 (7th Cir. 1997) ..................................................................................3

*Hamlyn v. Rock Island County Met. Mass Trans. Dist.*,
   960 F. Supp. 160 (C.D. Ill. 1997) ..........................................................................9

*Harlan v. Scholz*,
   2016 WL 5477103 (N.D. Ill. 2016) ........................................................................8

*Hightower v. Searcy*,
   656 F.2d (5th Cir. 1981), *aff'd without opinion*, 455 U.S. 984 (1982)..................6

*Hohe v. Casey,*
   868 F.2d 69 (3d Cir. 1989).....................................................................................9

*Holley v. Roanoke*,
 162 F. Supp. 2d 1335, 1339 (M.D. Ala. 2001) ...................................................................6

*Irby v. Virginia Bd.*,
 889 F.2d 1352 (4th Cir. 1989) ..........................................................................................6

*Jackson v. Ogilvie*,
 426 F.2d 1333 (7th Cir. 1970) ..........................................................................................8

*Judge v. Quinn*,
 612 F.3d 537 (7th Cir. 2010) ............................................................................................8

*Latham v. Bd. of Ed. of City of Chicago*,
 31 Ill. 2d 178 (1964) .........................................................................................................5

*Mixon v. State of Ohio*,
 193 F.3d 389 (6th Cir. 1999) .........................................................................................5, 6

*Moore v. School Reform Bd. of Detroit*,
 147 F. Supp. 3d 679 (E.D. MI. 2000) ............................................................................6, 7

*Obama for America v. Husted*,
 697 F.3d 423 (6th Cir. 2012) ............................................................................................8

*People v. Deatherage*,
 401 Ill. 25 (1948) ..............................................................................................................6

*Prewitt v. Moore*,
 840 F.Supp. 436 (N. D. Ms. 1993) ...................................................................................7

*Puffer-Hefty Sch. Dist. v. Du Page Reg'l Bd. of Sch. Trustees of Du Page City*.
 339 Ill. App. 3d 194 (2d Dist. 2003) .................................................................................5

*Roland Machinery Co. v. Dresser Industries, Inc.*,
 749 F.2d 380 (7th Cir. 1984) ............................................................................................9

*Sailors v. Bd. of Ed. of Kent Cty.*,
 387 U.S. 105 (1967) ..........................................................................................................5

*Storck, L.P. v. Farley*,
 14 F.3d 311, 314 (7th Cir. 1994) ......................................................................................4

*Swan v. Bd. of Educ. of the City of Chi.*,
  2013 WL 4401439, at *27 (N.D. Ill. 2013) ........................................................................9

*W.A. Mack, Inc. v. Gen. Motors Corp.*,
  260 F.2d 886, 890 (7th Cir. 1958) ....................................................................................3

*Williams v. Salerno*,
  792 F.2d 323 (2nd Cir. 1986)............................................................................................8

*Williams v. State Bd. of Elec.*,
  696 F. Supp. 1563 (N.D.Ill.1988) .....................................................................................7

*Wisconsin Cent. Ltd. v. Public Service Com. of Wisconsin*,
  95 F.3d 1359 (7th Cir. 1996) .......................................................................................9, 10

**Statutes**

Fed. R. Civ. P. 12(b)(1) ...........................................................................................................4

Fed. R. Civ. P. 12(b)(6) ...........................................................................................................4

Fed. R. Civ. P. 65 ........................................................................................................... *passim*

Illinois Election Code, 10 ILCS 5/2A-1.1 .............................................................................11

Illinois Election Code, 10 ILCS 5/4.......................................................................................11

Illinois Election Code, 10 ILCS 5/8.......................................................................................11

Illinois Election Code, 10 ILCS 5/28.....................................................................................11

Illinois School Code, 105 ILCS 5/34-3 ......................................................................... *passim*

Voting Rights Act, 52 U.S.C. §10301 ........................................................................... *passim*

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| PATRICK QUINN, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> BOARD OF EDUCATION OF THE CITY OF CHICAGO, *et al.*, <br><br> Defendants. | Case No. 2016-cv- 9514 <br><br> Judge Elaine E. Bucklo <br><br> Magistrate Judge Sheila Finnegan |

**BOARD OF EDUCATION OF THE CITY OF CHICAGO'S RESPONSE TO PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION**

Defendant Board of Education of the City of Chicago (the "Board"), submits this Response in opposition to the Plaintiffs' Motion for a Preliminary Injunction, and in support thereof, incorporates all legal arguments raised in its Motion to Dismiss, and further states as follows:

**Introduction**

This matter arises from constitutional and civil rights challenges to 105 ILCS 5/34-3 of the Illinois School Code ("§34-3"). On November 30, 2016, the Plaintiffs filed a Motion for a Preliminary Injunction in this matter based upon Count I and Count III only. (ECF# 25). Count I contends that §34-3 violates the Plaintiffs' equal protection rights because they are unable to vote for members of the Board, and that this is discriminatory on account of race. Count III claims that §34-3 violates the Voting Rights Act because the Plaintiffs have not been given the right to vote for members of the Board, whereas other Illinois citizens have a right to vote for their local school boards. The Plaintiffs seek preliminary injunctive relief to compel the Defendants to "draft procedures for an election of members of the [Board] while this suit is pending in order to allow

1

for an election on April 4, 2017." Alternatively, the Plaintiffs seek to "advance the trial on the merits of certain of their claims…and enter judgment in Plaintiffs' favor." *Id.*

The Plaintiffs are not entitled to a preliminary injunction. The Plaintiffs offer no compelling reason to justify the granting of a preliminary injunction and there is no "irreparable" harm in allowing this case to be litigated in the normal course. Indeed, §34-3 has been on the books for decades—and nothing explains why injunctive relief is necessary now. Interestingly, during the many years §34-3 has been in effect, one of the Plaintiffs served as the Governor and Lieutenant Governor of Illinois—all for a total of eight years—yet took no action to relieve the purported harms of §34-3.

Moreover, the Plaintiffs have no "right" to an elected Board and therefore cannot establish any likelihood of success on the merits. Similarly, the Plaintiffs will be unable to establish irreparable harm by invoking a nonexistent right and will be unable to show that balancing the harms favors granting a preliminary injunction. An injunction would destabilize the school system, imperil governance, and displace the Board's ability to maintain financial stability.

Furthermore, the doctrine of prudential standing establishes that the requested injunction should not be granted. In effect, the Plaintiffs seek injunctive relief that would affirmatively change the School Code to require that the Board be changed from an appointed board to an elected one. The very nature of the injunctive relief requested here simply goes far beyond the scope of any relief that this Court should order. In fact, Rule 65 makes clear that this Court cannot provide the Plaintiffs' injunctive relief. Undertaking an election requires the collaboration of the County Clerk and the Board of Election Commissioners for the City of Chicago in order to implement and execute the multitude of logistical, practical, and legal requirements of an election. Under Rule 65, this Court cannot compel non-parties to adhere to an order granting injunctive relief where

such parties have not received notice or an opportunity to be heard on the issues raised in the motion. In addition, Rule 65(c) <u>requires</u> the Plaintiffs to post an enormous bond under these circumstances and their motion is curiously silent as to their willingness, or ability, to do so. Injunctive relief is not possible under these circumstances.

Lastly, Chicago's mayor has always appointed members of the Board. In 1995, the General Assembly vested in the mayor the sole power to appoint members of the Board without the City Council's consent. The General Assembly enacted §34-3 to ensure that the Board was "fully appointed [] and appointed on a regular basis." 89th Gen. Assem. Sen., May 4, 1995, p. 134.

### **Argument**

#### I. **Legal Standard For Granting A Preliminary Injunction.**

A motion seeking a preliminary injunction is governed by Rule 65 of the Federal Rules of Civil Procedure. "A preliminary injunction is an extraordinary remedy that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Chi. Dist. Council of Carps. Pension Fund v. K & I Constr., Inc.*, 270 F.3d 1060, 1064 (7th Cir. 2001). Preliminary injunctions seeking to compel litigants to affirmatively take actions—such as in this case where the Plaintiffs seek a city-wide election—are "rarely issued and interlocutory mandatory injunctions are e[v]en more rarely issued, and neither except upon the clearest equitable grounds." *W.A. Mack, Inc. v. Gen. Motors Corp.*, 260 F.2d 886, 890 (7th Cir. 1958); *Graham v. Med. Mut. of Ohio*, 130 F.3d 293, 295 (7th Cir. 1997) (mandatory injunctions are "cautiously viewed and sparingly issued."). Here, the Plaintiffs are not entitled to a preliminary injunction.

#### II. **The Plaintiffs Cannot Establish They Are Entitled To An Injunction.**

Plaintiffs have not established that they (1) do not have an adequate remedy at law, (2) that they will suffer irreparable harm if the preliminary injunction is denied, and (3) that they have a

likelihood of success on the merits. *Ezell v. City of Chi.*, 651 F.3d 684, 694 (7th Cir. 2011). The Court also "weighs the factors against one another assessing whether the balance of harms favors the moving party, or whether the harm to the nonmoving party or the public is sufficiently weighty that the injunction should be denied." *Id.*

A "sliding scale" test is applied when considering the balance of the harms, such that when a stronger likelihood of success is shown, the movant need not establish as strong of a showing on the balance of harms. *Storck USA, L.P. v. Farley Candy Co.*, 14 F.3d 311, 314 (7th Cir. 1994) ("balancing involves a 'sliding scale' analysis: the greater the movant's chance of success on the merits, the less strong a showing must it make that the balance of harms is in its favor."). Conversely, where the likelihood of success is weak, the movant must make an even more compelling showing relative to the balance of the harms in its favor. *Id.* at 315. ("Once the district court determined that Storck's likelihood of success on the merits of its claim was slight, it required [it] to make a proportionately stronger showing that the balance of harms was in its favor"). Here, the Plaintiffs have not made such strong showing and the likelihood of their success on the merits of each count is remote.

**III.     The Plaintiffs Cannot Establish A Likelihood Of Success On The Merits.**

Here, a preliminary injunction should not be issued because the Plaintiffs cannot establish a likelihood of success as to Count I or Count III. The Board adopts and incorporates those arguments in its Motion to Dismiss pursuant to Rule 12(b)(1) and Rule 12(b)(6), as if fully set forth herein.

> A.  *There Is No Likelihood Of Success On The Merits Based Upon Count I Because There Is No "Right" To Vote For A School Board Under Federal Or Illinois Law.*

With respect to Count I, the Plaintiffs will not establish any likelihood of success on the merits because the Plaintiffs have no "right" to vote for the Board. As the U.S. Supreme Court,

4

various U.S. Circuit Courts, and the Illinois Supreme Court have each separately held, there is no "right" to an elected school board. *Sailors v. Bd. of Ed. of Kent Cty.*, 387 U.S. 105, 108 (1967) ("we find no constitutional reason why [the Board of Education of Kent County] may not be chosen by the governor, by the legislature, or by some other appointive means rather than by an election."); *Mixon v. State of Ohio*, 193 F.3d 389, 403 (6th Cir. 1999) (collecting cases and noting that "there is no fundamental right to elect an administrative body such as a school board, even if other cities in the state may do so.")

In *Latham v. Bd. of Ed. of City of Chi.*, 31 Ill. 2d 178 (1964), the Illinois Supreme Court rejected an equal protection claim against the Board similar to the claim asserted in the instant case. In *Latham*, the plaintiffs argued that their equal protection rights were violated because §34 purportedly "deprive[d] them of the right to vote for members of the Board of Education which franchise is given residents of smaller districts." *Id.* at 185. The Illinois Supreme Court reasoned that the Illinois legislature has the constitutional power to determine which school boards are best suited for appointed members and that §34-3 was a valid exercise of the legislature's constitutional authority. *Id.* The Illinois Supreme Court concluded that voting for Chicago's school board was only a "purely permissive [ability] bestowed by legislative grace in furtherance of the policy of the legislature." *Id.* at 186; *see also Puffer-Hefty Sch. Dist. v. Du Page Reg'l Bd. of Sch. Trs. of Du Page Cty.*, 339 Ill. App. 3d 194 (2d Dist. 2003).

Likewise here in Count I, the Plaintiffs contend that they have a "right" to an elected school board and that their equal protection rights are violated because they cannot vote for members of the Board, unlike other Illinois citizens who do vote for their local school boards. As the *Latham* court reasoned however, the Plaintiffs possess no such "right" because the Illinois Constitution empowers the General Assembly to select which school districts are best suited for an appointed

5

board and which are best suited for an elected board. Therefore, there can be no "right" to vote for the Board when the General Assembly, in exercising its judgment when passing §34-3, decided to have a Board comprised of appointed members. The Plaintiffs arguments must be rejected because the Illinois Constitution "does not guarantee that every person with a patent interest in the outcome of a school election has, because of that interest, a right to vote therein." *People v. Deatherage*, 401 Ill. 25, 35 (1948). Therefore, the Plaintiffs cannot establish a likelihood of success on the merits in connection with Count I.

> B. There Is No Likelihood of Success On The Merits Based Upon Count III Because The Voting Rights Act Cannot Apply When There Is No "Right" To Vote For A School Board.

Likewise with respect to Count III, the Plaintiffs cannot establish a likelihood of success on the merits in connection with the Voting Rights Act because they do not possess a "right" to vote for members of the Board. *Mixon*, 193 F.3d at 403; *Irby v. Va. State Bd. of Elections*, 889 F.2d 1352, 1357 (4th Cir.1989) (rejecting an argument that Virginia's appointive system of school boards violated Section 2 of the Voting Rights Act); *Searcy v. Williams*, 656 F.2d 1003, 1010 (5th Cir. 1981) (law calling for appointment of education board not within Act, holding that "this case involved an appointive rather than an elective scheme, and thus the district court was correct in holding that voting rights did not apply."), *aff'd, without op. sub nom. Hightower v. Searcy*, 455 U.S. 984 (1982); *Holley v. Roanoke*, 162 F. Supp. 2d 1335, 1339 (M.D. Ala. 2001) (rejecting challenge in appointments of board of education because "Act applied only to those systems in which officials were chosen through election" even though practice "resulted in diminution of African-American voting power"); *Moore v. Sch. Reform Bd. of Detroit*, 147 F. Supp. 2d 679 (E.D. Mich. 2000) ("Section 2 of the Voting Rights Act does not apply to appointed processes" of Detroit's school board), *aff'd,* 293 F.3d 352 (6th Cir. 2001).

6

Simply put, the Voting Rights Act protects an <u>existing</u> right to vote but it cannot be distorted to create a "right" where such does not exist under the law. Even the text of 52 U.S.C. §10301(a) conditions the applicability of the Act upon a "denial or abridgement of <u>the right</u> of any citizen of the United States to vote on account of race or color." (emphasis added). That the Voting Rights Act does not create a right to vote has been recognized by the U.S. Supreme Court and within the Seventh Circuit. *See Chisom v. Roemer*, 501 U.S. 380, 401 (1991) ("Louisiana could, of course, exclude its judiciary from the coverage of the Voting Rights Act by changing to a system in which judges are appointed"); *Williams v. State Bd. of Elec.*, 696 F. Supp. 1563, 1568–69 (N.D. Ill. 1988) (rejecting Voting Rights Claim reasoning that "plaintiffs cannot challenge the appointment of Associate Circuit Court judges" because they "are appointed officials" under applicable law.)

Moreover, while the Plaintiffs contend that §34-3 deprives minorities of influence, the Act still does not apply when dealing with appointed officers. *See Dillard v. Crenshaw County*, 831 F.2d 246, 251, n. 12 (11th Cir. 1987) (an "unelected position would not be subject to the Voting Rights Act."); *Bradley v. Indiana State Elec. Bd.,* 797 F. Supp. 694, 698 (S.D. Ind. 1992) (Act did not apply to judicial appointments). This is true even if a law calling for an appointed office indirectly limits the influence of a minority group. *African-American Cit. v. Robbins*, 825 F.Supp. 885 (1993), *aff'd*, 24 F.3d 1052, 1053 (8th Cir. 1994) ("Section 2 of the Voting Rights Act is inapplicable" even though "[i]t is no doubt true…that all St. Louis voters, including the City's African–American voters, have less influence over local police affairs"); *Prewitt v. Moore*, 840 F. Supp. 436, 437 (N.D. Miss. 1993) (no violation in appointed judicial officers despite argument that statute "diminishes the voting power of black Mississippians"). Therefore, there can be no

7

likelihood of success on the merits by invoking the Voting Rights Act in connection with Count III and the Plaintiffs' Motion for a Preliminary Injunction should be denied.

### C. The Plaintiffs' Case Law Is Not Persuasive.

In an effort to establish that they can prevail on the merits, the Plaintiffs cite to *Jackson v. Ogilvie*, 426 F.2d 1333 (7th Cir. 1970) and *Judge v. Quinn*, 612 F.3d 537 (7th Cir. 2010) in a misguided argument to claim that "this Circuit has ordered emergency injunctive relief to have elections occur." But the Plaintiffs are wrong and both *Jackson* and *Judge* are not applicable. These cases concern the unique circumstance of vacancies in seats held by members of the U.S. Congress and the citizens' constitutional rights to be represented therein. *Jackson v. Ogilvie* concerned the issuance of a writ requiring an election to fill a vacancy for a congressional seat upon the death of Representative Daniel Ronan. *Judge v. Quinn* concerned a vacancy in the U.S. Senate upon Barack Obama being elected as President. In both cases the plaintiffs there argued that they possessed a constitutional right to be represented in Congress and invoked Article I, §2 of the Constitution, which specifically requires that "executive authorities shall issue writs of election to fill [ ] vacancies." *Jackson* and *Judge* are clearly distinguishable.

The Plaintiffs remaining cases are inapplicable and unavailing. *Obama for America v. Husted*, 697 F.3d 423 (6th Cir. 2012) concerned the grant of an injunction to prevent the imposition of a deadline for early in-person voting throughout the state of Ohio. *Williams v. Salerno*, 792 F.2d 323 (2nd Cir. 1986) concerned an injunction to require voting registration for students at the State University of New York. *Harlan v. Scholz*, 2016 WL 5477103 (N.D. Ill. 2016) is a case currently on appeal where an equal protection claim has been asserted regarding electronic polling materials for some counties, but not in others in an election for a member of the U.S. House of Representatives. Each of these cases involves claims surrounding voting for constitutionally-

8

mandated offices. More fundamentally, the issues disputed in these cases concern the procedural requirements as to how voting is to take place—unlike here where the Plaintiffs assert a challenge attempting to create a new right to vote. Therefore, these cases are not persuasive.

### IV. There Is No Irreparable Harm Or Inadequate Remedy At Law Because The Plaintiffs Do Not Have An Underlying "Right" To Vote For A School Board.

A preliminary injunction should not be issued because the Plaintiffs, who ask the Court for a mandatory injunction, cannot show that they will suffer irreparable harm. Here, the Plaintiffs have lived under the present statutory construction of §34-3 since its amendment in 1995—yet nothing is alleged as to what has changed recently to create such an irreparable harm. To have an irreparable harm, the Plaintiffs must show that they possess an underlying right to the relief sought, in this case, a "right" to vote for a school board. As Judge Posner has noted, "[e]quity jurisdiction exists only to remedy legal wrongs; without some showing of a probable right there is no basis for invoking it." *Roland Machinery Co. v. Dresser Industries, Inc.*, 749 F.2d 380, 387 (7th Cir. 1984).

Within constitutional claims, there is no irreparable harm to warrant injunctive relief where there is no infringement of an underlying legal right. *Swan v. Bd. of Educ. of the City of Chi.,* 2013 WL 4401439, at *27 (N.D. Ill. 2013); *Wisconsin Cent. Ltd. v. Public Service Com. of Wisconsin*, 95 F.3d 1359, 1369 (7th Cir. 1996) (movants seeking injunction based on constitutional due process challenge "have not demonstrated that the rules violate the public use requirement and therefore failed to show any harm (much less any irreparable harm)") (emphasis added); *Hamlyn v. Rock Island County Met. Mass Trans. Dist.*, 960 F. Supp. 160 (C.D. Ill. 1997) (citing *Hohe v. Casey,* 868 F.2d 69, 73 (3d Cir. 1989) ("Constitutional harm is not necessarily synonymous with the irreparable harm necessary for issuance of a preliminary injunction")); *Ditton v. Rusch*, 2014 WL 4435928 at *5 (N.D.Ill. 2014) (no irreparable harm based on First Amendment violation where county lay-offs did not implicate right to political speech). Here, as articulated above, there is no

9

underlying "right" to vote for a school board and for that same reason, there can be no irreparable harm warranting the issuance of any injunctive relief.

## V. The Balance Of The Harms Favors Not Granting An Injunction.

The balancing of harms will be weighed using the "sliding scale" test, which depends upon the Court's assessment of the Plaintiffs' likelihood of success on the merits. The sliding scale test evaluates the harm to be sustained by the Plaintiffs if the injunction is not granted, against the harm sustained by the Defendants if the injunction is granted. *Ezell*, 651 F.3d at 694. Apart from merely considering the harm to the defendants directly, the court is to consider any harm sustained by the public (the "public interest") in relation to the injunction. *Id.* Here, the Plaintiffs' likelihood of success on the merits is too remote, so the Plaintiffs would be required to significantly demonstrate that the balance of harms is in their favor.

Moreover, in the instant case, the balance of harms overwhelmingly favors not granting any injunction. As discussed above, because there is no right to vote for a school board, there can be no "harm." *Wisconsin Cent. Ltd.*, 95 F.3d at 1369 (movants seeking injunction failed to show "any harm (much less any irreparable harm)" where no constitutional due process rights were violated). The balance of the harms actually favors the Defendants since granting injunctive relief is certain to destabilize the governance of Chicago's school system, disrupt the Board's ongoing operations, compromise its financial stability, and erode its ability to ensure that critical labor relations remain stable. All of these factors will be certain to imperil almost 400,000 school children, as well as teachers and parents who would be affected by the same. Thus, the balance of harms here favors not granting an injunction.

VI. **Prudential Standing And Rule 65 Make Clear That The Requested Injunction Cannot Be Granted.**

Prudential standing provides an additional reason why the requested injunction should not be granted. In effect, the Plaintiffs seek to have this Court take the unprecedented step of changing §34-3 of the School Code to require an elected board, which would be a dramatic departure from well over a century of statutory law that has always provided that the Board would be appointed, and has never called for Chicago's citizens to elect the Board.

The Plaintiffs' motion for a preliminary injunction should also be denied because the actual government entities that are required to carry out an election are not parties in this case and would not be bound by an injunction. Pursuant to 10 ILCS 5/2A-1.1, any election would require compliance with the Illinois Election Code, which requires many other government entities to participate before an election may proceed. The Illinois Election Code, 10 ILCS 5/5-3, provides that the Board of County Commissioners must appoint the registry in precincts where voters actually cast their ballots. 10 ILCS 5/5-4 requires the County Clerk to take certain responsibilities to register voters. Under 10 ILCS 5/5-8, the Clerk must ensure that polling locations elections are appropriately staffed, including with "Deputy Registrars, Officers of Registration and Judges of Registration", who must ensure polling places operate correctly. 10 ILCS 5/28-5 requires that the County Clerk be responsible for processing of ballots. None of these critical tasks fall within the statutory (or logistical) capabilities of the Board. Therefore, the staffing and designation of all of these vital parts of an election would have to take place by non-parties that cannot be bound by any injunction issued under these circumstances. Pursuant to Rule 65(d)(2), the only "persons bound" to any injunction can be those "who receive actual notice of it only by personal service or otherwise," corporate officers or any entity that is in "active concert" with the defendant. Rule

65(a)(1) also provides that notice is a required element of an injunction. *Ed. Comm., Inc. v. Universal Who's Who Pub., Inc.*, 1999 WL 618099 (N.D. Il. 1999).

Lastly, Rule 65(c) provides that "the court may issue a preliminary injunction…<u>only if</u> the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." (Emphasis added). Here, the Plaintiffs' motion is curiously silent as to the Plaintiffs' willingness, or ability, to provide a security that is commensurate with the enormous "costs and damages sustained" by the Board and other county and municipal agencies if they are wrongfully enjoined.

## **Conclusion**

WHEREFORE, Defendant Board of Education of the City of Chicago, respectfully requests that this Court enter an order denying the Plaintiffs' Motion for a Preliminary Injunction, and for any other relief this Honorable Court deems appropriate.

Dated: December 19, 2016　　　　　　　　　Respectfully Submitted,

　　　　　　　　　　　　　　　　　　　　　CHICAGO BOARD OF EDUCATION OF THE
　　　　　　　　　　　　　　　　　　　　　CITY OF CHICAGO

　　　　　　　　　　　　　　　　　　By:　/s/ *Stephen H. Pugh*
　　　　　　　　　　　　　　　　　　　　　One of Its Attorneys
　　　　　　　　　　　　　　　　　　　　　Pugh, Jones & Johnson, P.C.
　　　　　　　　　　　　　　　　　　　　　180 North LaSalle Street, Suite 3400
　　　　　　　　　　　　　　　　　　　　　Chicago, Illinois 60601
　　　　　　　　　　　　　　　　　　　　　Telephone: (312) 768-7800
　　　　　　　　　　　　　　　　　　　　　Facsimile: (312) 768-7801

**CERTIFICATE OF SERVICE**

      I, Stephen H. Pugh, an attorney, certify that I caused a copy of the foregoing ***Board of Education of the City of Chicago's Response to the Plaintiffs' Motion for a Preliminary Injunction*** to be served upon the below-listed individual(s), by depositing the same in the U.S. Mail box at 180 North LaSalle Street, Chicago, Illinois 60601, postage prepaid, same-day personal delivery by messenger, FedEx overnight delivery, facsimile transmitted from (312) 768-7801, electronic mail, or Case Management/Electronic Case Filing System ("CM/ECF"), as indicated below, on December 19, 2016.

|   |   |   |
|---|---|---|
| ☒ CM/ECF<br>☐ Facsimile/___ Pages<br>☐ Federal Express<br>☐ U.S. Mail<br>☐ Messenger<br>☐ Electronic mail | | *Attorneys for Plaintiffs*<br>Sean Morales-Doyle<br>Despres, Schwartz & Geoghegan, Ltd.<br>77 West Washington Street<br>Suite 711<br>Chicago, Illinois 60602<br>(312) 372-2511 |

                                                By:    /s/ *Stephen H. Pugh*