**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

PATRICK QUINN, IRENE ROBINSON,
ANTWAIN MILLER, MARC KAPLAN,
CHRISTOPHER BALL, DANIEL
MORALES-DOYLE, and JITU BROWN

      Plaintiffs,

           v.

BOARD OF EDUCATION OF THE CITY
OF CHICAGO; JAMES MEEKS, STEVEN
GILFORD, MELINDA LABARRE, CURT
BRADSHAW, LULA FORD, CRAIG
LINDVAHL, ELIGIO CERDA PIMENTEL,
CESILIE PRICE, and JOHN SANDERS,
members of the ILLINOIS STATE BOARD
OF EDUCATION, in their official capacities,
and STATE OF ILLINOIS

      Defendants.

Case No. 2016-cv- 9514

Judge Elaine E. Bucklo

Magistrate Judge Sheila Finnegan

**THE STATE DEFENDANTS' REPLY**
**IN FURTHER SUPPORT OF THEIR MOTION TO DISMISS**

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................ 1

ARGUMENT ...................................................................................................................... 2

   I.  Plaintiffs' Claims Against the ISBE Defendants Should Be Dismissed. .......................... 2

      A. Plaintiffs Have Conceded the ISBE Defendants Should Be Dismissed. ..................... 2

      B. Plaintiffs Also Fail to State a Claim under 42 U.S.C. § 1983. .................................. 2

         1.  Section 34-3 Does Not Violate Plaintiffs' Right to Vote under the
Equal Protection Clause and the First Amendment. .......................................... 2

         2.  Section 34-3 Does Not Violate Plaintiffs' Due Process and
Equal Protection Rights. ................................................................................ 8

         3.  Section 34-3 Does Not Violate Plaintiffs' Rights Under the
Fourteenth and Fifteenth Amendments ............................................................ 10

   II.  Plaintiffs' Claims Against the State Should Also Be Dismissed. ................................... 10

      A. Section 34-3 Does Not Violate Plaintiffs' Rights under the Voting Rights Act. ....... 10

      B. Section 34-3 Does Not Violate Plaintiffs' Rights under the Title VI of the
Civil Rights Act. ...................................................................................... 13

   III.  Abstention Is Appropriate in this Case. ...................................................................... 14

CONCLUSION ................................................................................................................... 15

i

The members of the Illinois State Board of Education, in their official capacities (the "ISBE Defendants"), and the State of Illinois (the "State," and together with the ISBE Defendants, the "State Defendants") submit this reply in further support of their motion to dismiss.

## INTRODUCTION

In their opening brief, the ISBE Defendants explained that they were not the proper parties for a challenge regarding the appointment or election of a school board. Because Plaintiffs fail to respond to this argument at all, the claims against the ISBE Defendants should be dismissed.

The State Defendants also argued that Plaintiffs' claims should be dismissed because Section 34-3 of the School Code, 105 ILCS 5/34-3, is valid and constitutional. In response, Plaintiffs argue that because Illinois has chosen to make some school boards elective, its decision to address issues facing the Chicago public school system differently violates the Constitution. Plaintiffs additionally suggest that the leading case primarily relied upon by State Defendants, *Sailors v. Bd. of Educ. of Kent Co*., 387 U.S. 105 (1967), is no longer good law, but this claim is incorrect. Plaintiffs have no fundamental right to vote for school boards, and the challenged statute easily passes the rational basis test. Plaintiffs' due process claim regarding taxation also fails because the Chicago Board is publicly accountable through the election of the mayor of Chicago. Moreover, Plaintiffs ignore *Latham v. Bd. of Educ. of City of Chicago*, 31 Ill. 2d 178 (1964), in which the Illinois Supreme Court rejected a similar due process challenge to the Chicago Board's taxing authority. Plaintiffs' claims under the Fourteenth and Fifteenth Amendment likewise fail because Plaintiffs cannot establish the required discriminatory intent.

Plaintiffs' Voting Rights Act claim against the State fares no better, as they cannot overcome the substantial authority holding that Section 2 of the Voting Rights Act does not apply to appointed offices like the Chicago Board. Plaintiffs' Title VI claim fails both because Plaintiffs

1

lack standing and because they have not adequately alleged discriminatory intent. Accordingly, the Court should dismiss all claims against the State Defendants.

## ARGUMENT

**I.      Plaintiffs' Claims Against the ISBE Defendants Should Be Dismissed.**

**A.      Plaintiffs Have Conceded the ISBE Defendants Should Be Dismissed.**

In their opening brief, the ISBE Defendants argued that they should be dismissed from this action because they are not the proper defendants for a challenge to the constitutionality of Section 34-3. Dkt. 35 at 16-18. Because the ISBE Defendants have no specific duty with regard to the appointment of the Chicago Board of Education or the election of other local school boards, both the Eleventh Amendment and the "case or controversy" requirement bars a lawsuit against the ISBE Defendants. *Id.* Plaintiffs offer no response to the ISBE Defendants' arguments on these points (*see* Dkt. 43), effectively conceding that these arguments are correct. *See Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) ("Failure to respond to an argument . . . results in waiver."); *Goodpaster v. City of Indianapolis*, 736 F.3d 1060, 1075 (7th Cir. 2013) ("Because they did not provide the district court with any basis to decide their claims, and did not respond to the [defendant's] arguments, these claims are waived."). Accordingly, all claims against the ISBE Defendants should be dismissed.

**B.      Plaintiffs Also Fail to State a Claim under 42 U.S.C. § 1983.**

**1.      Section 34-3 Does Not Violate Plaintiffs' Right to Vote under the Equal Protection Clause and the First Amendment.**

In their opening brief, the State Defendants explained that Section 34-3 does not violate the Plaintiffs' right to vote under the Equal Protection Clause of the Fourteenth Amendment and the First Amendment because Plaintiffs have no constitutional right to elect non-legislative, administrative officers, such as school board members. *See* Dkt. 35 at 5-12. In response, Plaintiffs

2

argue that a leading case on this issue (*Sailors*, 387 U.S. 105), was "all but formally overruled" (Dkt. 43 at 4) by *Hadley v. Junior College Dist.*, 397 U.S. 50 (1970) and *Avery v. Midland County*, 390 U.S. 474 (1968). But Plaintiffs' argument misunderstands the holdings of *Sailors*, *Hadley*, and *Avery*, which are completely consistent. Moreover, no court has ever even suggested that *Sailors* was overruled or superseded.

In *Sailors*, the Supreme Court held that state or local officers of a "nonlegislative character," such as a school board, could be appointed rather than elected. 387 U.S. at 108. The Court further held that the "one person, one vote rule" did not apply where the officials in question were appointed rather than elected. *Id.* at 109. In *Hadley*, the Supreme Court held that, when local officials are elected, the "one person, one vote rule" applied to that election:

> This Court has consistently held in a long series of cases, that *in situations involving elections*, the States are required to insure that each person's vote counts as much, insofar as it as practicable, as any other person's. We have applied this principle in congressional elections, state legislative elections, and local elections. The consistent theme of those decisions is that the right to vote in an election is protected by the United States Constitution against dilution or debasement. While the particular offices involved in these cases have varied, in each case a constant factor is the decision of the government to have citizens participate individually by ballot in the selection of certain people who carry out governmental functions. Thus in the case now before us, while the office of junior college trustee differs in certain respects from those offices considered in prior cases, it is exactly the same in the one crucial factor—*these officials are elected by popular vote*.

397 U.S. at 54 (emphasis added). Similarly, in *Avery*, the Supreme Court addressed the "one person, one vote rule" in the context of an elected government body. The *Avery* Court held that county commissioners must be elected from districts that were substantially equal in population. 390 U.S. at 480-81.

Here, Plaintiffs misinterpret *Hadley* and *Avery* as holding that residents of Chicago must be allowed to vote in school board elections merely because Illinois residents outside the City of

3

Chicago are afforded the opportunity to vote for members of the boards of their local school districts. But it is important to recognize that *no* Chicago resident is allowed to vote for Chicago Board members. If the Illinois legislature chose to put in place a scheme to elect Chicago Board members, then every qualified voter would certainly be entitled to the one person, one vote rule set forth in *Reynolds v. Sims*, 377 U.S. 533 (1964). But in this case, Chicago Board members are appointed, not elected. And because there is no requirement that Chicago Board members must be elected, there is no basis to apply the one person, one vote rule set forth in *Reynolds v. Sims*.

This case does not involve a situation in which the votes of certain Chicago residents are afforded greater weight than others. For example, had Section 34-3 of the School Code created an elective scheme that allowed only parents of children currently attending Chicago Public Schools to vote or somehow afforded those parents a greater weight in the voting scheme, then equal protection and equal elections principles would be called into question.

In other words, under *Sailors*, *Avery* and *Hadley*, a State may choose to have an appointed or an elected school board. "But once a State has decided to use the process of popular election," voting power must be apportioned equally. *Hadley*, 397 U.S. at 59. In fact, the *Hadley* and *Avery* decisions expressly approved of the *Sailors* decision: "We have also held that where a State chooses to select members of an official body by appointment rather than election, and that choice does not itself offend the Constitution, the fact that each official does not 'represent' the same number of people does not deny those people equal protection of the laws." *Id.* at 58; *citing Sailors*, 387 U.S. 105; *Avery*, 390 U.S. at 485 (noting that the *Sailors* decision "rested on the administrative nature of the area school board's functions and the essentially appointive form of the scheme employed.").

4

Contrary to Plaintiffs' argument, no court has ever recognized or even suggested that *Sailors* has been overruled or superseded. In fact, subsequent U.S. Supreme Court decisions continue to cite to *Sailors*. *See, e.g., Rodriguez v. Popular Democratic Party*, 457 U.S. 1, 9-10 (1982). Since the *Hadley* decision in 1970, federal and state courts have cited *Sailors* in over 200 opinions, and as one federal court has recognized, "*Sailors* remains good law." *Twp. of Marlboro v. Bd. of Educ. of Freehold Reg'l High Sch.*, 992 F. Supp. 756, 764 (D.N.J.), *supplemented*, 9 F. Supp. 2d 500 (D.N.J. 1998). And the Ninth Circuit, the Fifth Circuit, and the Illinois Supreme Court have all applied *Sailors* to find that appointment of local government officials did not violate equal protection or the "one person, one vote" principle. *See Kirk v. Carpeneti*, 623 F.3d 889, 898 (9th Cir. 2010) ("As the district court correctly concluded, . . . the right to equal voting participation has no application to the Judicial Council because the members of the Council are appointed, rather than elected."); *Ehm v. Bd. of Trustees of Metro. Rapid Transit Auth. of San Antonio*, 251 F. App'x 930, 932 (5th Cir. 2007) (appointment of transit board members did not violate equal protection); *Stroger v. Reg'l Transp. Auth.*, 201 Ill. 2d 508, 521-22 (2002) (appointment of RTA board did not "abridge plaintiffs' fundamental constitutional right to vote").

Plaintiffs further argue that the Sixth Circuit's decisions in *Mixon v. State of Ohio*, 193 F.3d 389 (6th Cir. 1999) and *Moore v. Detroit School Reform Bd.*, 293 F.3d 352 (6th Cir. 2002) are also wrong, both because these decisions rely on *Sailors* and because they conflict with the Seventh Circuit's statement in *Pittman v. Chicago Bd. of Educ.*, 64 F.3d 1098 (7th Cir. 1995) that "a school district is a general-purpose government." Dkt. 43 at 9. But Plaintiffs' block quotation from *Pittman* (*id.* at 8) involves the creative use of ellipses; they left out the court's observation that the school board at issue in *Kramer v. Union Free School District No. 15,* 395 U.S. 621 (1969) "was a special-purpose governmental body, just like the local school councils in [*Pittman*]—and

5

indeed both cases involve the same special governmental function, education." *Pittman*, 64 F.3d at 1102. There is no conflict between the Seventh Circuit's holding in *Pittman* that the structure of the local school councils under the 1988 Act was constitutional and the Sixth Circuit's holdings that the states of Michigan and Ohio could provide for the appointment of school boards for troubled urban school districts. As the Seventh Circuit observed in *Pittman*: "It is common knowledge that the public schools of Chicago are a troubled institution. A change in the method of their governance may or may not bring about an improvement. That is a judgment for a legislature to make, not a court." *Id.* at 1103.

Plaintiffs then erroneously claim that because "*Sailors* is now superseded in its central holding," the appointment of the Chicago Board "should be judged under the standard of *Burdick v. Takushi*, 504 U.S. 428, 434 (1992) and *Anderson v. Celebrezze*, 460 U.S. 780 (1982), like any other statewide burden on the right to vote." Dkt. 43 at 7. Plaintiffs' premise that federal courts apply the *Anderson/Burdick* test to all claims that a state election law burdens certain citizens' voting rights is incorrect. As discussed in the State Defendants' opening brief, the rational basis test is often used in cases regarding voting rights and elections (*see* Dkt. 35 at 8-9), but even if the Court applied the *Anderson/Burdick* test here, the result would be the same. Neutral non-discriminatory laws like this one relating to elections will generally be upheld under the *Anderson/Burdick* test. Plaintiffs' central premise is that the State may choose to have appointed boards statewide, or may choose to have elected boards statewide, but may not have an appointed board in only one municipality without showing that the restriction serves a compelling state interest. But as the Seventh Circuit has repeatedly recognized, "[i]t is common knowledge that the public schools of Chicago are a troubled institution." *Pittman*, 64 F.3d at 1103; *see also Hearne v. Board of Ed. of City of Chicago,* 185 F.3d 770, 775 (7th Cir. 1999) ("The crisis [the General

6

Assembly] perceived in Chicago also was a legitimate reason to take immediate action there, leaving open the possibility of extending similar measures to other places."). And education is the quintessential compelling state interest. *See, e.g.*, *Fumarolo v. Chi. Bd. of Educ.*, 142 Ill. 2d 54, 90 (1990); *see also* ILL. CONST. art. X, § 1 ("A fundamental goal of the People of the State is the educational development of all persons…."). Section 34-3 is narrowly tailored to serve that interest, and while Plaintiffs may argue that having an appointed board has not improved Chicago's schools, "[t]hat is a judgment for a legislature to make, not a court." *Pittman*, 64 F.3d at 1103; *see also Hearne*, 185 F.3d at 775.

Finally, Plaintiffs argue that the Illinois Supreme Court's decision in *Latham v. Bd. of Educ. of City of Chicago*, 31 Ill. 2d 178 (1964) is no longer persuasive because it preceded *Hadley*; they further argue that "the Illinois Supreme Court now regards the right to vote as a fundamental constitutional right, so that any variation in distribution of such a fundamental right to the people of the Statue is subject to strict scrutiny." Dkt. 43 at 9*, citing Tully v. Edgar*, 171 Ill. 2d 297, 306 (1996); *Fumarolo v. Chi. Bd. of Educ.*, 142 Ill. 2d 54, 73 and 89-90 (1990). But these cases actually support the appointment of the Chicago Board. In *Tully*, the Illinois Supreme Court expressly indicated that transitioning a school board from an elective to appointive office is entirely constitutional and valid. 171 Ill. 2d at 313. The Court explained that "[t]he primary purpose of the Act was to change the Board of Trustees from an elective to an appointive office. *Without the provision removing the elected trustees from office midterm*, the Act is constitutional and satisfies its apparent objective." *Id*. (emphasis added). And in *Fumarolo*, the Illinois Supreme Court held that "[w]here a body is appointed and not elected, there need not be compliance with the one person, one vote rule." 142 Ill. 2d at 98, *citing Sailors*, 387 U.S. at 111 ("[s]ince the choice of

7

members of the county school board did not involve an election and since none was required for these nonlegislative offices, the principle of 'one man, one vote' has no relevancy").

Just as the Sixth Circuit upheld the statutory procedures for appointing school board members in the cities of Cleveland and Detroit, even though school board members for districts in the remaining parts of their respective states are elected, this Court too should find that the statutory scheme of Section 34-3 of the School Code is valid and constitutional. *See Mixon v. State of Ohio*, 193 F.3d 389 (6th Cir. 1999); *Moore v. Detroit School Reform Bd.*, 293 F.3d 352 (6th Cir. 2002). Because Section 34-3 of the School Code is constitutional as a matter of law and does not violate Plaintiffs' right to equal protection and equal elections, Count I fails to state a claim and should be dismissed with prejudice.

## 2. Section 34-3 Does Not Violate Plaintiffs' Due Process and Equal Protection Rights.

Plaintiffs argue that the delegation of the power to tax to an unaccountable, appointed body violates their right to due process of law. Plaintiffs' argument is without merit. Plaintiffs disregard the fact that the Chicago Board is appointed by the mayor, a duly elected official. Accordingly, the mayor is accountable to the public for the actions of the Chicago Board. Chicago residents and voters are free to elect a mayor who will appoint Chicago Board members to their liking and approval. And if Chicago residents are unsatisfied with the mayor's selection of Chicago Board members, they can exercise political pressure on the mayor through the mayoral electoral process.

Moreover, the Illinois Supreme Court has rejected a similar due process challenge to the taxing authority of the Chicago Board. In an ill-fated attempt to distinguish *Latham*, Plaintiffs assert that the City Council had to approve the mayor's appointed candidates to the Chicago Board when the *Latham* case was decided in 1964. However, pursuant to Section 34-3, the mayor has

8

sole and exclusive power to appoint Chicago Board members. Thus, Plaintiffs essentially argue that their right to due process has been infringed because the City Council no longer has a role in approving the mayor's appointments to the Chicago Board. But Plaintiffs cannot escape the Illinois Supreme Court's holding that the legislature has "practically unlimited" power to "create any conceivable kind of a corporation it sees fit for the more efficient administration of public affairs and endow such corporation with such powers and functions as it deems necessary and proper for the administration of such corporate powers and affairs." *Latham*, 31 Ill. 2d at 186-87. Moreover, because the Chicago Board's duties and powers are expressly codified in the School Code, its authority is not absolute, unregulated, or undefined. *See id*. at 187.

Furthermore, Plaintiffs complain that, although they have to pay property taxes for Chicago Public Schools, their voices are not heard because they have no right to vote for Chicago Board members. But a tax is not an assessment of benefits. *Carmichael v. S. Coal & Coke Co*., 301 U.S. 495, 522 (1937). The U.S. Supreme Court has long held that,

> The only benefit to which the taxpayer is constitutionally entitled is that derived from his enjoyment of the privileges of living in an organized society, established and safeguarded by the devotion of taxes to public purposes. Any other view would preclude the levying of taxes except as they are used to compensate for the burden on those who pay them, and would involve the abandonment of the most fundamental principle of government—that it exists primarily to provide for the common good. A corporation cannot object to the use of the taxes which it pays for the maintenance of schools because it has no children. This Court has repudiated the suggestion, whenever made, that the Constitution requires the benefits derived from the expenditure of public moneys to be apportioned to the burdens of the taxpayer, or that he can resist the payment of the tax because it is not expended for purposes which are peculiarly beneficial to him.

*Id*. at 522-23. There is no legal link between taxation and a state's decision to make an office like the School Board elective or appointive. A resident may be taxed to support public schools, but that does not imply the taxpayer has a right to vote for school board members if state law provides that board members are appointed by another official accountable to the

9

electorate—in this case, the mayor. Because Section 34-3 does not violate Plaintiffs' right to due process or equal protection, Count II should be dismissed with prejudice.

### 3. Section 34-3 Does Not Violate Plaintiffs' Rights Under the Fourteenth and Fifteenth Amendments.

In their opening brief, the State Defendants explained that Plaintiffs' claims under the Fourteenth and Fifteenth Amendment fail because Plaintiffs cannot establish discriminatory intent. *See Mixon*, 193 F.3d at 406; *Moore*, 293 F.3d at 370. Section 34-3 is a neutral classification and there is no evidence that the General Assembly enacted Section 34-3 "specifically because it wanted to disadvantage African Americans." *Hearne*, 185 F.3d at 776. In response, Plaintiffs attempt to distinguish *Hearne* as a case in which the plaintiffs "attempted to prove racial intent by alleging disparate impact." Dkt. 43 at 10. But Plaintiffs ignore the Seventh Circuit's statement that "there is nothing here to indicate that the Illinois General Assembly structured the Chicago school reform legislation specifically because it wanted to disadvantage African Americans." *Hearne*, 185 F.3d at 776. And while Plaintiffs do argue that the General Assembly intended to benefit white property owners at the expense of minority schoolchildren and their parents (Dkt. 43 at 11), "plaintiffs' saying this is so in their pleadings is not enough to allow them to survive a Rule 12(b)(6) motion, when the legislation itself contains not a hint of an impermissible racial classification." *Hearne*, 185 F.3d at 776. Thus, Plaintiffs' claims under the Fourteenth and Fifteenth Amendments should also be dismissed.

## II. Plaintiffs' Claims Against the State Should Also Be Dismissed.

### A. Section 34-3 Does Not Violate Plaintiffs' Rights under the Voting Rights Act.

In their opening brief, the State Defendants explained that Section 2 of the Voting Rights Act does not apply to appointed offices such as the Chicago Board. Dkt. 35 at 14-15. In response,

Plaintiffs argue that "Section 2 applies to a state law that disqualifies people from voting and that has a disparate effect." Dkt. 43 at 11. Plaintiffs analogize Section 34-3 to voter identification laws, which they argue can "completely den[y] the right to vote," and to felon disenfranchisement laws. *Id*. at 12-13. Plaintiffs argue that in both types of cases, the courts have analyzed the plaintiffs' claims under the Voting Rights Act, even though the law "formally denies the right to vote." *Id*. at 12. But there is a key difference between Section 34-3 and those voting laws: in both voter identification and felon disenfranchisement cases, the State was holding an election in which the plaintiffs would otherwise have a right to vote. For example, in *Frank v. Walker*, 819 F.3d 384, 386-87 (7th Cir. 2010), the issue was whether certain voters' inability to obtain a photo ID would prevent them from voting in elections that they were otherwise eligible to participate in. Similarly, in the felon disenfranchisement cases, the issue is whether the state could take away a convict's right to vote in elections. *See, e.g., Farrakhan v. Gregoire*, 623 F.3d 990, 993 (9th Cir. 2010) ("By definition, felon disenfranchisement takes effect only after an individual has been found guilty of a crime."). In contrast, here there is no pre-existing right to vote for the Chicago Board that the State is burdening or otherwise adversely impacting. For example, if a statute provided for an elected school board but only property owners were allowed to vote, that might result in a claim under Section 2. But where the office is appointed, there is no claim under Section 2.

Plaintiffs' attempts to circumvent the many cases holding that Section 2 of the Voting Rights Act does not apply to appointed offices are ineffectual. Plaintiffs argue that *Mixon* and *Moore* employ "circular reasoning" when they hold that Section 2 of the Voting Rights Act does not apply to appointed offices. Dkt. 43 at 11. But they never attempt to grapple with the plain language of Section 2, which refers specifically to the "nomination or election" of representatives, rather than appointment. 52 U.S.C. § 10301. And while they attempt to distinguish some of the

11

many cases holding that Section 2 does not apply to appointed offices (Dkt. 43 at 13-15), Plaintiffs ignore other cases holding that having an appointed school board did not violate Section 2 of the Voting Rights Act, even if other school boards in the state are elected. For example, in *Ross v. Texas Educ. Agency*, No. CIV.A. H-08-3049, 2009 WL 3254935 (S.D. Tex. Sept. 28, 2009, *aff'd*, 409 F. App'x 765 (5th Cir. 2011), the court held the state's decision to replace the elected board of a troubled school district with an appointed board of managers did not violate Section 2 of the Voting Rights Act. *Id*. at *3. The court found that Section 2 did not apply because "[t]here is no constitutional provision prohibiting the appointment of school boards" (*id*. at *8, *citing Sailors*, 387 U.S. at 108) and every voter in the school district, regardless of race, was affected equally by the appointment of the school board. *Id*. Similarly, in *African–American Legal Defense Fund, Inc. v. New York*, 8 F. Supp. 2d 330, 334 (S.D.N.Y.1998), New York City's Board of Education was appointed by the City's mayor and borough presidents, while other cities and towns within the state elected their boards directly. The court held that because the "purely appointive process . . . affords no opportunity to *any* member of the electorate to express a choice directly," Section 2 of the Voting Rights Act could not apply. *Id*. at 339 and n.14.[1]

Finally, as discussed above and in the defendants' opening briefs, Plaintiffs' discriminatory intent claim under Section 2 of the Voting Rights Act should also be dismissed because there is no merit to Plaintiffs' claim that the General Assembly intended to disenfranchise

---

[1] *See also Friends of Eudora Pub. Sch. Dist. of Chicot Cty., Ark. v. Beebe*, No. 5:06CV0044, 2008 WL 828360, at *7 (E.D. Ark. Mar. 25, 2008) ("Section 2 of the VRA does not require local school boards to be elected at all."); *Prewitt v. Moore*, 840 F. Supp. 436, 440 (N.D. Miss. 1993) ("[T]he Voting Rights Act does not reach appointment procedures which do not involve voting. . . . Indeed, it is well recognized that section 2 is inapplicable to appointive offices."); *Williams v. State Bd. of Elections*, 696 F. Supp. 1563, 1568–69 (N.D. Ill. 1988) (holding that minority voters stated Section 2 claims with respect to the election of appellate and circuit court judges, but that Section 2 did not apply to associate judges, explaining that "we cannot extend coverage of the Voting Rights Act beyond its terms. The Voting Rights Act covers elected officials only. Associate judges are appointed officials.").

minorities by passing the 1995 Act. For these reasons, Plaintiffs' claims under Section 2 of the Voting Rights Act should be dismissed.

### B. Section 34-3 Does Not Violate Plaintiffs' Rights under the Title VI of the Civil Rights Act.

In their opening brief, the State Defendants explained that Plaintiffs lacked standing because they have not alleged that they are the intended beneficiaries of any federal funded program. Dkt. 35 at 16. In response, Plaintiffs argue that while "some courts have held that parents do not have standing to sue regarding race discrimination in public schools in their own right under Title VI," they have allowed parents to sue on behalf of their minor children. Dkt. 43 at 18-19. But the Plaintiffs in this case have not brought this Title VI claim on behalf of their children, nor could they. The gravamen of Plaintiff's Title VI claim is that "minority race *parents*" are discriminated against because they cannot vote for the Chicago Board (Dkt. 1 ¶ 132 (emphasis added)); the Plaintiffs' minor children could not maintain such a claim because they are too young to vote. Next, Plaintiffs argue that these courts are wrong because various federal statutes provide that schools should attempt to involve parents in their children's education. Dkt. 43 at 18-19. But Plaintiffs nowhere allege this in their Complaint, and it is "axiomatic" that parties may not amend their complaint through a response brief. *Pirelli Armstrong Tire Corp. Retiree Medical Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 448 (7th Cir. 2011). In any case, Plaintiffs' limited citations do not establish that parents are the intended beneficiaries of education programs, and they fall far short of establishing that grandparents are such beneficiaries. Accordingly, Plaintiffs' Title VI claims should be dismissed.

Moreover, as discussed in the State Defendants' opening brief, statutory claims under Title VI rise and fall with a plaintiff's Equal Protection challenge. *See, e.g.*, *Grutter v. Bollinger,* 539

U.S. 306, 343 (2003). In response, Plaintiffs argue that Title VI only requires an allegation of "deliberate indifference" to discrimination, rather than actual intent. Dkt. 43 at 18. But the courts only apply a deliberate indifference standard when judging a school's reaction to peer-on-peer harassment. *See Doe v. Galster*, 768 F.3d 611, 617 (7th Cir. 2014) ("A peer-harassment plaintiff must demonstrate . . . officials were "deliberately indifferent" to the harassment."); *Fennell v. Marion Indep. Sch. Dist.*, 804 F.3d 398, 408 (5th Cir. 2015) ("Since *Davis,* courts of appeals presented with Title VI student-on-student harassment claims have applied the deliberate indifference standard from *Davis.*"). The "deliberate indifference" standard does *not* apply to claims regarding the adoption of a rule or statute. *See, e.g., Pryor v. Nat'l Collegiate Athletic Ass'n.*, 288 F.3d 548, 567 (3d Cir. 2002) (allegations that challenged rule was adopted with deliberate indifference to rule's purported disparate impact on black student athletes failed to state Title VI claim). It is "well settled by the Supreme Court" that "a decisionmaker will not commit purposeful discrimination if it adopts a facially neutral policy 'in spite of' its impact, not 'because of' that impact." *Id*. Accordingly, Plaintiffs' Title VI claim should be dismissed for the same reasons as their Equal Protection and Fifteenth Amendment claims.

## III.     Abstention Is Appropriate in this Case.

In their opening brief, the State Defendants explained that, in the alternative, the Court should abstain from hearing this case under either *Colorado River* abstention or the *Wilton-Brillhart* doctrine. In response, Plaintiffs argue that the *Wilton-Brillhart* doctrine "is plainly inapplicable" because they "seek injunctive relief to compel the defendants to hold an election." Dkt. 43 at 25. But this argument confuses their cause of action with the relief sought. Plaintiffs seek both declaratory and injunctive relief (*see* Dkt. 1 ¶¶ 96, 101, 129, 132), both of which are available through the Declaratory Judgment Act. *See* 28 U.S.C. §§ 2201-2202.

14

Plaintiffs also argue that this case does not present the "extraordinary circumstances" required for abstention under *Colorado River*. Dkt. 43 at 20. Plaintiffs are correct that the various factors to be considered are not a "mere checklist," and that the Court should engage in "careful balancing" of the factors. *Id*. at 21. The key point here is that the same set of plaintiffs, represented by the same set of counsel, filed two lawsuits on the same day, which allege the same set of facts and substantially similar causes of action. That is the definition of piecemeal litigation. And, contrary to Plaintiffs' claims, the federal courts have abstained from hearing federal constitutional claims, even Equal Protection claims based on racial discrimination. *See, e.g., Hearne*, 185 F.3d at 777-78 (district court properly abstained from hearing one plaintiff's claims under *Colorado River*, but should have stayed case rather than dismissing it). Accordingly, this Court should exercise its discretion to stay or dismiss this action.

## CONCLUSION

For these reasons as well as those presented in their opening brief, the State Defendants respectfully request that this Honorable Court dismiss Plaintiffs' Complaint with prejudice.

LISA MADIGAN
Attorney General of Illinois

/s/ *Sarah H. Newman*

By:    Sarah H. Newman
       Amy M. McCarthy
       Assistant Attorneys General
       General Law Bureau
       100 W. Randolph St., 13th Fl.
       Chicago, Illinois 60601
       312-814-6131 / 312-814-1187
       snewman@atg.state.il.us
       amccarthy@atg.state.il.us

## <u>CERTIFICATE OF SERVICE</u>

The undersigned attorney hereby certifies that the foregoing Reply was filed through the Court's CM/ECF system on January 17, 2017. Parties of record may obtain a copy through the Court's CM/ECF system. The undersigned certifies that no party of record requires service of documents through any means other than the CM/ECF system.

<u>/s/ *Sarah H. Newman*  </u>

16