**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| PATRICK QUINN, *et al.,* | |
| Plaintiffs, | |
| | Case No. 2016-cv- 9514 |
| v. | |
| | Judge Elaine E. Bucklo |
| BOARD OF EDUCATION OF THE CITY OF CHICAGO, *et al.*, | Magistrate Judge Sheila Finnegan |
| Defendants. | |

**BOARD OF EDUCATION OF THE CITY OF CHICAGO'S REPLY IN SUPPORT OF
ITS MOTION TO DISMISS**

Dated: January 17, 2017

Respectfully Submitted,

CHICAGO BOARD OF EDUCATION

By:  */s/* Stephen H. Pugh
   One of Its Attorneys
   Stephen H. Pugh (ARDC No. 2262177)
   Pugh, Jones & Johnson, P.C.
   180 North LaSalle Street, Suite 3400
   Chicago, Illinois 60601
   Telephone: (312) 768-7800
   Facsimile: (312) 768-7801
   SPugh@pjjlaw.com

**TABLE OF CONTENTS**

Introduction ........................................................................................................................... 1

Argument ............................................................................................................................... 3

   I.  Count I And Count IV Should Be Dismissed. .................................................... 3

  II.  There Is No Violation Of The Voting Rights Act And Count III Should Be Dismissed. . 10

  III.  Count II Fails To State A Violation Of Due Process. ....................................... 13

  IV.  Plaintiffs Are Not Entitled To An Injunction. ................................................. 15

Conclusion ............................................................................................................................ 16

# TABLE OF AUTHORITIES

<u>Cases</u>

*African American Legal Def. Fund v. New York Board of Education*,

  8 F. Supp. 2d 330 (S.D.N.Y. 1998) ……………...........……………………….…8, 11

*African-American Cit. v. Robbins*, 825 F. Supp. 885, 887 (1993), *aff'd*,

  24 F.3d 1052, 1053 (8th Cir. 1994) …………………………….……………11, 12

*Avery v. Midland Co. Tex.*,

  390 U.S. 474 (1968) ……………………………………………….…….......7

*Burdick v. Takushi*,

  504 U.S. 428 (1992) …………….….……………………………........ 9

*Chisom v. Roemer*,

  501 U.S. 380 (1991) …………………..……………….............……………………11

*Cohanim v. New York City. Bd. of Edu.*,

  204 F. Supp. 2d 452 (E.D. N.Y. 2002) ……………….…………….............……5

*Farrakhan v. Gregoire*,

  623 F.3d 990 (9th Cir. 2010) ……………….........……….............……………………13

*Frank v. Walker*,

  768 F.3d 744 (7th Cir. 2014) …………….…..............……….………………..12

*Frank v. Walker*,

  819 F.3d 384 (7th Cir. 2016) ……..........…………….............…….…..….…...........…12, 13

*Fumarolo v. Bd. of Education,*

  142 Ill. 2d 54 (1990) …….........……….......................…….........…7, 9

*Hadley v. Junior College Dist.*,

  397 U.S. 50 (1970) …….........……….......….......…...........……...…........... *passim*

*Holly v. Roanoke*,

  162 F. Supp. 2d 1335, 1339 (M.D. Al. 2001) ……….........………….............……….........12

*Hoots v. Com. of Pa.*,

  672 F.2d 1124, 1131 (3rd Cir. 1982) ……….........…….……….…....................……….3

ii

*Irby v. Virginia State Bd. of Elections*,

    889 F.2d 1352, 1355 (4th Cir.1989) …..…………………………….........................………10

*Kraemer v. Union Free School Dist. No. 15*,

    395 U.S. 621 (1969) ………..........……………………………………….……………........................7

*Latham v. Board of Education*,

    31 Ill. 2d 178 (1964) ………..........………..........…........………..………………….….... *passim*

*Mixon v. State of Ohio*,

    193 F.3d 389, 403 (6th Cir. 1999) …..…….…........………..........…..………….............................8, 10

*Moore* v. *Sch. Reform Bd. of Detroit*,

    293 F.3d 352 (6th Cir. 2001) ………..........……..………….…..........….……………...........……7

*Phillips v. Snyder*,

    836 F.3d 707, 715 (6th Cir. 2016) …...……………..........……..…...........................................3

*Pittman v. Chicago Bd. of Educ.*,

    64 F.3d 1098 (7th Cir. 1995) ...........…..…………..........…….……………........ *passim*

*Prewitt v. Moore*,

    840 F. Supp. 436, 437 (N.D. Miss. 1993) ...........…....….… F. Supp. …...............…….…………12

*Puffer-Hefty Sch. Dist. v. Du Page Reg'l Bd. of Du Page Cty.*,

    339 Ill. App. 3d 194 (2nd Dist. 2003) …….........…………..........…...…...…….........……......9, 10

*Racine Charter One v. Racine Unif. Sch. Dist.*,

    424 F.3d 677, 685 (7th Cir. 2005) …...…………..........…………………………........10

*Sailors v. Board of Edu. of Kent County*,

    387 U.S. 105 (1967) …………….…..........……....…....………….…...……………………… *passim*

*Spaulding v. Ill. Comm. College Bd.*,

    64 Ill. 2d 449, 456 (1976) …...…………..........…...….……………………......…....…...........14

*Srail v. Vil. of Lisle*,

    588 F.3d 940, 943 (7th Cir. 2009) .........…...….… .........................…………….…........9

*Tully v. Edgar*,

    171 Ill. 2d 297 (1996) …..…………..........……………........………….…...............................9

*Vander Linden v. Hodges*,

   193 F.3d 268, 280 (4th Cir. 1999) ……...........…………......................…………….........……….3

*Welch v. Brd. of Edu. of Balt. Cnty.*,

   477 F. Supp. 959 (D. Md. 1979) ……...........…………………......…………….........…….8


<u>Statutes</u>

105 ILCS 5/34-3 ("§34-3") .........…………………......................………...................... *passim*


<u>Rules</u>

Rule 12(b)(6) ..…………...…………….............………………………..……………...1

Rule 12(b)(1) ..…………...…………….............………………………..……………...1

Rule 65(d)(2) ……...……...………….............………………………..………………16


<u>Other Authorities</u>

89th Gen. Assembly Senate Proceedings, May 4, 1995, at p. 134; 136 ………..………………10

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| PATRICK QUINN, *et al.,* | |
| Plaintiffs, | |
| | Case No. 2016-cv-9514 |
| v. | |
| | Judge Elaine E. Bucklo |
| BOARD OF EDUCATION OF THE CITY OF CHICAGO, *et al.*, | Magistrate Judge Sheila Finnegan |
| Defendants. | |

**BOARD OF EDUCATION OF THE CITY OF CHICAGO'S REPLY IN SUPPORT OF**
**ITS MOTION TO DISMISS**

Defendant Board of Education of the City of Chicago (the "Board"), submits this reply in support of its Motion to Dismiss pursuant to Rule 12(b)(6) and Rule 12(b)(1) of the Federal Rules of Civil Procedure, and states as follows:

**Introduction**

Plaintiffs' Memorandum (ECF #43) fails to cite a single case supporting their legal theories. Instead, Plaintiffs urge that entire lines of case law be overturned based upon a new paradigm they advance.

At the threshold, Plaintiffs concede that there is no constitutional right to vote for a school board. Plaintiffs expressly state that "there is no inherent affirmative right of any citizen, black or white, to vote for members of the school board." (ECF #43, at p. 15). Plaintiffs acknowledge that the State of Illinois "***could*** have a uniformly appointive system." (ECF#43, at p. 3) (emphasis in original). According to Plaintiffs, the infirmity here is ***not*** that every citizen has a right to vote for a school board, but that it violates the Fourteenth Amendment right to due process and Section 2 of the Voting Rights Act to deny ***all*** citizens of Chicago — African American, Latino, white, and

1

anyone else — the right to elect the school board when the rest of the State gets to elect their school boards. Plaintiffs are wrong, as settled case law shows.

Plaintiffs also concede that it **would be permissible** under the Fourteenth Amendment and under Section 2 of the Voting Rights Act for the rest of the State to have direct elections for school boards but for Chicago to have an appointed school board subject to "indirect election through the City Council." (ECF #43, at pp. 10, 16). Plaintiffs' concession—that "indirect election" is permissible—is fatal to Plaintiffs' claims. Chicago citizens do have "indirect election" through the Mayor. Plaintiffs offer no plausible explanation why "indirect election by the City Council" is permissible but indirect election by the Mayor is not. Indeed, unlike members of the City Council, who are elected by voters in specific wards, the Mayor is elected by popular vote on a City-wide basis. In the election for Mayor, there is no possibility of disconnect between the will of the majority and the result of the mayoral election.

Plaintiffs also seek to lay claim to their own political cause, complaining that Chicago residents are subject to "taxation without representation." (ECF #43, at p. 18). Plaintiffs, however, cannot square their taxation argument with their threshold concession that Illinois could have appointed school boards State-wide. If Illinois did so, all school boards in the State could tax without having been elected, and Plaintiffs would have no quarrel with that system. The taxation argument is a red herring.

Plaintiffs contend that the General Assembly created the appointed school board system to prevent African American and Latino voters from electing a school board that would tax "property wealth . . . both massive in character and largely owned by whites." (EF#43, at p. 11). According to Plaintiffs, "the City of Chicago is a kind of Treasure Island." (*Id.*) Plaintiffs do not allege, nor could they, that the Chicago Board of Education has declined to use its taxing authority to the

fullest. The Plaintiffs cannot obtain any change in taxes levied by the Board by having an elected school board. The statutory tax cap would prevent *any* school board, be it elected or appointed, from imposing higher taxes. Plaintiffs really are complaining that the statutory tax cap is the problem—not the appointed school board. There is no legal support for the claims Plaintiffs advance, and the motions to dismiss should be granted.

<u>Argument</u>

**I.    Count I And Count IV Should Be Dismissed.**

Plaintiffs' advance misguided arguments to save their constitutional and Title VI claims. Those claims lack merit because there is no "equal right" to an elected school board and there has been no discrimination. Counts I and IV should be dismissed.

**A.   *Sailors v. Board of Edu. of Kent County* is Good Law—And Controls This Case.**

Plaintiffs begin by arguing that *Sailors v. Board of Edu. of Kent County*, 387 U.S. 105 (1967) "is no longer good law" (ECF, at #33 p. 4) because of *Hadley v. Junior College Dist.*, 397 U.S. 50 (1970). But then, just a few sentences later, they acknowledge that *Hadley* did "not formally overrule[]" *Sailors* (ECF #33, at p. 5)—a step Plaintiffs invite this Court to accomplish by ignoring *Sailors*.

*Sailors* remains good law and continues to be cited by federal courts, all well after *Hadley*. *See, e.g.*, *Phillips v. Snyder*, 836 F.3d 707, 715 (6th Cir. 2016) ("states may allocate the powers of subsidiary bodies among elected and non-elected leaders and policymakers. This power is squarely supported by *Sailors* []. . . .*Sailors* therefore indicates that…there is no fundamental right to have local officials elected."); *Hoots v. Com. of Pa.*, 672 F.2d 1124, 1131 (3d Cir. 1982) ("We find *Sailors* to be dispositive on the present case" in affirming judicial appointments); *Vander Linden v. Hodges*, 193 F.3d 268, 280 (4th Cir. 1999) (discussing *Sailors*' determination that the one-person, one-vote rule did not apply to appointed school board members). While Plaintiffs

3

believe that *Sailors* "can no longer be cited" (ECF #43, at p. 4), the Third, Fourth, and Sixth Circuits, among other courts, believe otherwise.

*Sailors* concerned a constitutional challenge to the selection of Kent County's board of education, which involved a "basically appointive rather than elective" process where the members were appointed by local officials. 387 U.S. at 109. This language in *Sailors* contradicts Plaintiffs' claim that "*Sailors* was not a challenge to an "appointed" board of education. . . ." (ECF # 43, at p. 5). *Sailors* clearly was a challenge to an appointed board. That board had powers which were "essentially administrative functions" and "not legislative" — including the implementation of "an annual budget and levy of taxes," controlling "delinquent taxes," employing teachers, and even the power to alter districts. *Id.* at 110, fn. 7. The board's powers did not trigger a constitutionally-required election because states have "vast leeway in the management of [their] internal affairs" when choosing appointed or elected boards, or a combination thereof. *Id.* at 110.

Plaintiffs Memorandum misreads *Sailors*. Plaintiffs claim, wrongly, that the "central holding" of *Sailors* is that the one-person, one-vote principle "never" applies to local units of government "under any arrangement." (ECF #43, at p. 5, 9). Curiously, Plaintiffs quote **no** passage of *Sailors,* nor do Plaintiffs cite to any page to support their reading. They then claim that *Hadley* was a "reversal of course" because it applied "one-person, one-vote" to an elected local college district. (ECF #43, at p. 5). In fact, *Sailors* contradicts Plaintiffs' assertion. *Sailors* provides that "where a State provides for an election of a **local** official or agency, the requirements of [one-person, one-vote] must be met . . . ." *Id.* at 109 (emphasis added).

Plaintiffs miss the mark as to **why** *Sailors* declined to apply the "one-person, one-vote" principle. *Sailors* reasoned that the "one-person, one-vote" principle did not apply because "the choice of members of the county school board did not involve an election"—therefore, "the

principle of 'one man, one vote' has no relevancy." 387 U.S. at 111. The appointed nature of the board—not its functions or status as a "local unit of government"—was *why* one-person, one-vote did not apply. *Accord*, *Hodges*, 193 F.3d at 280 ("*Sailors* turned on the fact that the challenged officials were *not* popularly elected" and that it "did not rest on whether county school board members or those who appointed them exercised governmental powers.")

In *Cohanim v. New York City. Bd. of Edu.*, 204 F. Supp. 2d 452 (E.D.N.Y. 2002), the plaintiff raised an equal protection challenge, arguing that New York City's appointed board of education (with two members appointed by the Mayor and five appointed by borough presidents) violated the "one-person, one-vote" principle. *Id.* at 453. After a studious review of *Sailors*, Judge Allyne Ross held that *Sailors* "clearly and definitively" disposed of the claim, because "an accurate reading of [*Sailors*] reveals that it held that one-person, one-vote was inapplicable not because the board was *administrative*, but because the board was *appointed*" and not elected. *Id.* at 454 (emphasis in original). *Sailors* "clearly and definitively" remains good law, and it applies here.

Likewise here, *Sailors* makes clear that the "one-person, one-vote" principle does not apply because §34-3 calls for an appointed board. Importantly, *Sailors* holds that the ability to levy taxes, hire teachers, annex territory, govern educational policy, and similar functions does not trigger any constitutional requirement that a school board be comprised of elected members, even when other boards of education are elected in that very same state. Simply stated, the principle of "one-person, one-vote" does not apply when state law calls for an appointed office such as in *Sailors*—and the appointed board in this case. Like the appointed board in *Sailors*, the General Assembly here has chosen to have the Board be comprised of appointed members. As in *Cohanim*, the case of *Sailors* "clearly and definitively" disposes of the Plaintiffs' claims here.

Equally misguided is Plaintiffs' claim that *Hadley* overruled *Sailors*—or that *Hadley* even supports their position. In *Hadley*, the plaintiffs contended that "their right to vote for trustees was being unconstitutionally diluted . . . ." 397 U.S. at 52. Here, Plaintiffs already have admitted (correctly) that "this is not a case about vote dilution. . . ." (ECF# 33, at p. 18). As analyzed in the Board's motion to dismiss, the dilution in *Hadley* consisted of a law that called for Kansas City residents to elect no more than 50% of the trustees of a single junior college district in a single election, all while representing 60% of the population within the district. *Id.* at 51-52. The Court reasoned that this formula violated the "one-person, one-vote" principle because it deprived Kansas City voters of being "on equal footing" by not allowing them to elect a number of trustees proportionate with their population within the district. *Id.* at 55. The Court explained that cases triggering the one-person, one-vote principle all rested on "one crucial factor—these officials are elected by popular vote." *Id.* at 54-55. *Hadley* conditioned the applicability of the one-person, one-vote principle on those situations where "a constant factor is the decision of the government to have citizens participate [in an election]." *Id.* As the *Hadley* Court explained, "the crucial consideration is the right of each qualified voter to participate on equal footing in the election process" when participating in a single election of a single district, when the law calls for an election to take place. *Id.* at 55.

Contrary to Plaintiffs' reading, *Hadley* and *Sailors* are not conflicting opinions. In *Sailors*, the Court made clear that "where a State provides for an election of a local official or agency, the requirements of [one-person, one-vote] must be met. . . ." 387 U.S. at 109. This is the very legal principle that *Hadley* applied when considering the Missouri statute. Unlike *Hadley*, this General Assembly's decision to create an appointed Board for Chicago does not present the "crucial"

consideration of a law that calls for voters to elect the Board.  Therefore the "one-person, one-vote" principle does not apply and *Hadley* cannot be availing.

For similar reasons, Plaintiffs' citations to *Avery v. Midland Co. Tex.*, 390 U.S. 474 (1968) and *Kraemer v. Union Free School Dist. No. 15*, 395 U.S. 621 (1969) miss the mark.  Both of those cases concern instances where the challenged laws called for the officials to be elected by popular vote while keeping certain citizens from being on "equal footing" with those voting for the same office.  In *Avery*, Midland County's districts were all represented by elected single-member commissioners—all without regard to the "substantially unequal" populations corresponding to each district.  That structure violated the "one-person, one-vote" principle because it left voters in the more populous districts without a proportionately equal amount of representation as the other districts.  In *Kraemer*, a law that limited the ability to vote in school elections only to parents or those owning property, was found to violate equal protection rights because it did not allow Kraemer to vote for a school board, whereas others who owned property or had children in the school could.  Both cases do not apply here.

Plaintiffs also cite to *Pittman v. Chicago Bd. of Educ.*, 64 F.3d 1098 (7th Cir. 1995) in an apparent effort to claim that "the Seventh Circuit and the Sixth Circuit in *Moore* [v. *Sch. Reform Bd. of Detroit*, 293 F.3d 352 (6th Cir. 2001)] flatly disagree as to whether a school district is a general-purpose government." (ECF #43, p. 9).  *Pittman* followed amendments to the school code required by *Fumarolo v. Bd. of Education,* 142 Ill. 2d 54 (1990), where school principals challenged the changes in the School Code which affected the composition of local school councils — not the Board.  No part of *Pittmann* concerned a challenge to the Board or its governing structure.  In *Pittman*, the plaintiffs complained that the amendments removed their tenure and changed the number of votes apportioned to each local school council in a manner that caused a

"substantial dilution" in the voting power of non-parent residents. *Id.* at 1101. *Pittman* rejected the principals' challenge and upheld the statute, reasoning that one-person, one-vote did not apply to "elections so local and specialized a governmental body as these local school councils." *Id.* Again, no part of the holding in *Pittmann* applied to the Board.

### B. A State Can Use Appointed *And* Elected Boards of Education Without Violating The Constitution Or Any Civil Rights.

Plaintiffs summarize their arguments most clearly on page seven, where they concede that a State may use appointive boards, but only if on a "statewide basis." According to Plaintiffs, a state may use appointed and elected boards only where a "precise" interest is identified. Here again, Plaintiffs cite ***no case*** applying this proposition to an appointed school board. There is a reason why Plaintiffs have no such cases: binding legal precedent contradicts their arguments.

In *Sailors*, the Court concluded that states have "vast leeway" when deciding to have appointed or elected boards of education, or both. 387 U.S. at 109. This "vast leeway" means that "a state can appoint local officials or elect them or ***combine*** the elective and appointive systems. . . ." *Id.* at 111 (emphasis added). *Hadley* cites *Sailors* to affirm this point, where the *Hadley* court notes, "A state may, in certain cases, limit the right to vote to a particular group or class of people." 397 U.S. at 58-59. Clearly, this means that states may employ a combination of appointed and elected school boards without violating the constitution or any civil rights. *Mixon v. State of Ohio*, 193 F.3d 389, 403 (6th Cir. 1999) ("there is no fundamental right to elect an administrative body such as a school board, even if other cities in the state may do so"); *African American Legal Def. Fund v. New York Board of Education*, 8 F. Supp. 2d 330 (S.D.N.Y. 1998) (rejecting equal protection and voting rights challenge to New York's education laws, which called for an appointed board in New York City, but permitted elected boards elsewhere in the state); *Welch v. Brd. of Edu. of Balt. Cnty.*, 477 F. Supp. 959 (D. Md. 1979) (upholding Maryland statute providing

for appointed school board in only some counties while others elected). It is not unconstitutional for a state to rely on a hybrid of appointed and elected school boards.

Plaintiffs also claim that *Latham v. Board of Education*, 31 Ill. 2d 178 (1964) is "even weaker authority" when considering the equal protection claim. Plaintiffs then claim that since *Latham* the Illinois Supreme Court has changed its views on "the right to vote." In support of this claim, Plaintiffs cite to *Tully v. Edgar*, 171 Ill. 2d 297 (1996) and *Fumarolo v. Bd. of Education*, 142 Ill. 2d 54 (1990)—both of which are unavailing for the reasons articulated in the Board's motion to dismiss. There is otherwise no case cited to support the conclusion that there has been any departure from *Latham*.

Plaintiffs also neglect to mention that the more recent case of *Puffer-Hefty Sch. Dist. v. Du Page Reg'l Bd. of Du Page Cty*., 339 Ill. App. 3d 194 (2d Dist. 2003), relied on *Latham* when applying rational basis in a local school voting dispute. Instead, Plaintiffs cite to *Burdick v. Takushi*, 504 U.S. 428 (1992) to claim that a "precise" and "necessary" interest is the appropriate level of scrutiny. *Burdick* concerned a challenge to Hawaii's ban of write-in votes for a general election to elect the state's House of Representatives. *Id.* at 430. In *Burdick*, the voting concerned a general election where there was an undisputed constitutional right to vote for the Hawaii House of Representatives, and the Court upheld the restriction by reasoning that Hawaii's interest in the prohibition outweighed the "slight" burden imposed on the plaintiff. *Id. Burdick* does not apply here and, as discussed below, §34-3 passes rational basis.

### C. Rational Basis Applies To §34-3, And It Passes This Scrutiny.

Because Plaintiffs have identified no fundamental right or discrimination, rational basis applies to §34-3. *Srail v. Vil. of Lisle*, 588 F.3d 940, 943 (7th Cir. 2009). A statute will survive a rational basis test where "it bears a rational relation to some legitimate end" of the government. Rational basis requires a court to "consider only whether ***any*** set of facts reasonably may be

conceived to justify the classification." *Racine Charter One v. Racine Unif. Sch. Dist.*, 424 F.3d 677, 685 (7th Cir. 2005) (emphasis added). As the Illinois Supreme Court noted in *Latham*, rational basis is the correct standard to apply when considering whether §34-3 survives Plaintiffs' claims. *Latham*, 31 Ill. 2d at 186; *see also Puffer-Hefty*, 339 Ill. App. 3d at 198 (applying rational basis to school voting dispute and rejecting the application of strict scrutiny).

Other federal courts have observed that there are valid reasons why an appointed school board survives rational basis, including "insulating school governance matters from politics" and "promoting stable school board membership." *Irby v. Virginia State Bd. of Elections*, 889 F.2d 1352, 1355 (4th Cir.1989); *Mixon*, 193 F.3d at 403 ("appointed school boards may provide significant benefits in a State's attempt to improve local schools.").

Here, the General Assembly concluded that an appointed board better served Chicago's school children. *See* 89th Gen. Assembly Senate Proceedings, May 4, 1995, at p. 134; 136 (citing prior inefficiencies in selecting the board, the need to ensure that "boards are fully appointed [] and appointed on a regular basis" as well as interests in the "Mayor carrying the burden of being responsible for the city"). Like *Latham*, *Mixon*, and *Irby*, there is a rational basis for §34-3.

## II. There Is No Violation Of The Voting Rights Act And Count III Should Be Dismissed.

Plaintiffs contend that §34-3 amounts to a "per se" violation of Section 2 of the Voting Rights Act because "minority race citizens of Chicago are the only Illinois citizens denied the right to have 'representatives of their own choosing.'" According to Plaintiffs, "it is not the use of an appointed board, but the inconsistency in the use that is the gist of the Section 2 violation." (ECF #43, at p.15). In essence, Plaintiffs' argument advances two principal claims: (1) that the Board members constitute "representatives of their choice" as set forth in Section 2; and (2) that Section

2 is violated because other parts of Illinois vote for a school boards, while §34-3 denies the "right" to vote for a school board to minorities in Chicago. Both claims lack merit.

Although Plaintiffs claim that Board members are "representatives of their choice" within the Voting Rights Act, Plaintiffs offer no legal support for their position. Moreover, *Chisom v. Roemer*, 501 U.S. 380 (1991) contradicts their argument. In *Chisom*, the Supreme Court observed that "a system in which judges are appointed" would "exclude [Louisiana's] judiciary from coverage of the Voting Rights Act." *Id.* at 401. The Court defined the "representatives" referenced in Section 2 of the Act to be "winners of representative, popular elections" or "someone who has prevailed in a popular election." *Id.* at 399-400. Therefore, a "representative" under the Act can relate only to a popular election—and not an appointed office. *Id.*

The plain text of Section 2 supports *Chisom's* reasoning. Section 2 uses the term "representative" in the context of "participat[ing] in the political process and to **elect** representatives of their choice." 52 U.S.C. §10301(b) (emphasis added). Here, the Board members are clearly not "representatives" within the meaning of the Act.

Nor do Plaintiffs' put forth a meritorious argument when asserting that the §34-3 is a "per se" violation of Section 2. Plaintiffs base their argument on the numbers of minorities in Chicago compared to elsewhere in Illinois. As the Board articulated in its Motion, the Act does not apply to appointed positions, including when appointments are alleged to disproportionately deny a specific group of influence. *African-American Cit. v. Robbins*, 825 F. Supp. 885, 887 (1993), *aff'd*, 24 F.3d 1052, 1053 (8th Cir. 1994) (Voting Rights Act did not apply, even though "[i]t is no doubt true. . . that all St. Louis voters, including the City's African–American voters, have less influence over local police affairs"); *African American Legal Def. Fund*, 8 F. Supp. 2d at 340 (rejecting African American advocacy group's Voting Rights Act claims asserting that New York's

combination of appointed and elected boards "dilutes the minority voting strength and their ability to elect their own representatives"); *Prewitt v. Moore*, 840 F. Supp. 436, 437 (N.D. Miss. 1993) (no violation in appointed judicial officers despite argument that statute "diminishes the voting power of black Mississippians"); *Holly v. Roanoke*, 162 F. Supp. 2d 1335, 1339 (M.D. Al. 2001) (rejecting claim in appointments of board of education because "Act applied only to those systems in which officials were chosen through election" even though practice "resulted in diminution of African-American voting power").

Equally misguided are Plaintiffs' efforts to distinguish the many cases cited by Defendants on the grounds that the cases sought different remedies when invoking the Voting Rights Act. The mere fact different litigants seek different remedies when invoking the Voting Rights Act does not alter the well-established principle that the Act does not apply to any appointed body, and therefore cannot provide any relief to them. So regardless of what different remedies may have been sought, the Act was of no avail to all of those litigants because—like the Plaintiffs here—they improperly sought to use the Voting Rights Act to challenge an appointed office. Plaintiffs are simply wrong in claiming that the *Robbins* plaintiffs "were not seeking a right to choose members of the St. Louis Police Board" but just "change the body that did the appointing." (ECF #43, at p. 14-15). In *Robbins*, the plaintiff sought to "enhanc[e] the electoral power of African American citizens in the city" by challenging a law that harmed "the voting power of African Americans in the City." *Robbins*, 825 F. Supp. at 887. Clearly, there is a nexus between diminishing "voting power" of African Americans and the racial disparities alleged in *Robbins*.

In support of their Voting Rights Act claim, Plaintiffs cite to *Frank v. Walker*, 768 F.3d 744 (7th Cir. 2014) and *Frank v. Walker*, 819 F.3d 384 (7th Cir. 2016). Here again, neither case addresses the Voting Rights Act as it applies to an appointed school board. Rather, the cases

12

concern Wisconsin's voter identification laws for voters participating in general elections. The Voting Rights Act violation in the 2016 *Walker* opinion was based on the fact that, "Under Wisconsin's current law, people who do not have qualifying photo ID thus cannot vote, even if it is impossible for them to get such an ID." 819 F.3d at 387. The Wisconsin law violated the Voting Rights Act because it prohibited certain citizens who could not obtain a photo ID from voting in any general election at all. This case is not like *Frank*—here, §34-3 does not prohibit all voters from voting in all elections. Unlike *Frank*, §34-3 does not concern an office to which any Chicago citizen has a "right" to vote. The *Frank* cases cannot be availing. Similarly, *Farrakhan v. Gregoire*, 623 F.3d 990 (9th Cir. 2010) (*en banc*) rejected a Voting Rights Act challenge to Washington's felon disenfranchisement law. *Farrakhan* cannot be persuasive either.

Plaintiffs provide no significant response to the Board's argument that Count III should be dismissed because there is no causal connection. As the Board set forth in its Motion, even Plaintiffs admit that they never possessed, before the amendment of §34-3, the very voting ability they seek to vindicate. There is no causal connection here—an issue that Plaintiffs have declined to contest in their Response. This failure alone is fatal to Count III.

## III.    Count II Fails To State A Violation Of Due Process.

Plaintiffs seek to salvage Count II, which is their due process claim, by recycling their failed arguments concerning *Sailors* and *Hadley*. For the reasons articulated above, *Sailors* remains good law, and provides guiding precedent that an appointed board of education may exercise taxing authority, governance of schools, and alter school boundaries—all without violating the constitution. Despite this, Plaintiffs cling to one sentence in *Pittman*, where the Seventh Circuit makes a passing reference to "taxation without representation" being "abhorrent" in a broad and general sense. 64 F.3d at 1102. But again, *Pittman* did not concern a challenge to

13

the Board or its governing authority. It did not even concern taxes—the concept of taxation is mentioned briefly in a discussion regarding powers that the Local School Councils did *not* have. But curiously, Plaintiffs neglect to mention that even *Pittman* recognized that the U.S. Supreme Court did not ever "single out the power to tax as critical to the decision" of whether to apply the one-person, one-vote standard in its precedent. *Id.* at 1103.

The Plaintiffs also contend that *Latham* "actually provides strong support" for their position that "Illinois courts insist on some kind of accountability to a legislative body before taxation can be imposed." (ECF #43, at p. 16). Here again, Plaintiffs stretch another case they cite. Plaintiffs contend that *Latham* permits the State to have an appointed school board, so long as the appointments are subject to City Council, but Plaintiffs assert that *Latham* would not permit an appointed school board that is not subject to City Council approval. Plaintiffs' reliance upon a theory of "indirect election"—permissible through the City Council but not through the Mayor— finds no support in law or logic. Unlike the City Council, whose members are elected ward by ward, the Mayor is elected in a City-wide popular election. Even under Plaintiffs' theory of "indirect election," §34-3 is a permissible method of selecting the school board.[1]

Plaintiffs conclude their due process argument by claiming that "the Illinois School Code subjects Plaintiffs and other Chicago residents to taxation without representation . . . the Board should not be able to levy billions of dollars . . . without any accountability at all." (ECF #43, at p. 18). Plaintiffs offer political rhetoric, but not a reasoned legal argument. Case law confirms that appointed school boards can have the power to tax. *Sailors*, 387 U.S. at 111, fn. 7. Plaintiffs also ignore that Chicago citizens *do* have ample recourse to address their tax complaints with

---

[1] Plaintiffs also make the threadbare claim that "whatever truth there was to [*Latham*'s reasoning] under the Constitution of 1870, it is no longer true that the legislature has such freedom." (ECF #43, at 17). This argument essentially claims that the Constitution of 1970 reduced the General Assembly's powers. The Illinois Supreme Court has rejected that contention. *Spaulding v. Ill. Comm. College Bd.*, 64 Ill.2d 449, 456 (1976).

elected representatives. The Mayor, who appoints the Board, is certainly elected by popular vote—and citizens can raise tax complaints with him (as surely many do).

More fundamentally, Plaintiffs assert that an appointed school board is a vehicle to protect the wealth of white property owners from the higher taxes that an elected school board would impose—all to the detriment of African American and Latino children. (ECF #43, at p. 22). If that is the core of Plaintiffs' concern, they really are complaining about the statutory tax cap, which applies whether the school board is appointed by the Mayor, appointed by the City Council, or elected in a general election.

Plaintiffs' argument about the statutory tax cap (ECF. #43, at p. 22) is wrong. They misread the statutory procedures concerning the 3.07% tax cap and the 4.0% tax. Regardless, Plaintiffs' argument about the tax cap is beside the point because it does not matter, for purposes of the legal argument, whether the cap is 3.07% or 4%. The statutory tax cap would prevent **_any_** school board, be it elected or appointed, from imposing higher taxes.

## IV. Plaintiffs Are Not Entitled To An Injunction.[2]

For the same reasons as set forth above, Plaintiffs cannot establish that they possess a likelihood of success on the merits or that they will suffer irreparable harm by complaining about a "right" which they do not possess in the first place. They are not entitled to a preliminary injunction (or any other relief whatsoever).

Plaintiffs' remaining arguments fail to appreciate what an election actually would require. (That is especially stunning, since the first named Plaintiff is the former Governor.) With respect to compelling the necessary parties to convene the election, Plaintiffs take the fanciful view that

---

[2] The Board recognizes that reply briefs are normally limited to addressing those issues in support of an underlying motion, *i.e.*, in this case the Board's Motion to Dismiss. However, the Plaintiffs have chosen to combine briefing on both the motions to dismiss and their motion for a preliminary injunction when they filed a reply brief. Accordingly, the Board will also combine its arguments in this filing.

"Plaintiffs *assume* that these officials will comply with the State's plans for holding an election." (ECF #43, at p. 24) (emphasis added). Plaintiffs also "assume" that those officials will collaborate in any "procedures" that they seek to have drafted and that those officials will comply with an order to which they have received no notice (in violation of Rule 65(d)(2)) and in a case where they are not a party and have had no opportunity to be heard on the issues. These are statements that can be made only with blissful naiveté of the significant resources, manpower, as well as logistical and legal efforts that would be required to orchestrate an election in one of the largest and most populous cities in the world—all in a mere two months. Plaintiffs otherwise dismiss the Board's concerns as "a parade of horribles" that will result if they obtain their relief. Here again, Plaintiffs fail to appreciate what is involved in having to govern Chicago's schools.

Plaintiffs' arguments cannot be persuasive, and the Plaintiffs are not entitled to a preliminary injunction.

### Conclusion

WHEREFORE, Defendant Board of Education of the City of Chicago respectfully requests that this Court enter an order dismissing the Complaint with prejudice, denying Plaintiffs' Motion for a Preliminary Injunction, and for any other relief this Honorable Court deems appropriate.

Dated: January 17, 2017

Respectfully submitted,

BOARD OF EDUCATION OF THE CITY OF CHICAGO

By:  */s/* Stephen H. Pugh
One of Its Attorneys
Stephen H. Pugh (ARDC No. 2262177)
Pugh, Jones & Johnson, P.C.
180 North LaSalle Street, Suite 3400
Chicago, Illinois 60601
Telephone: (312) 768-7800
Facsimile: (312) 768-7801
SPugh@pjjlaw.com

16

## <u>CERTIFICATE OF SERVICE</u>

I, Stephen H. Pugh, an attorney, certify that I caused a copy of ***Board of Education of the City of Chicago's Reply in Support of its Motion to Dismiss*** to be served upon the below-listed individual(s), by depositing the same in the U.S. Mail box at 180 North LaSalle Street, Chicago, Illinois 60601, postage prepaid, same-day personal delivery by messenger, FedEx overnight delivery, facsimile transmitted from (312) 768-7801, electronic mail, or Case Management/Electronic Case Filing System ("CM/ECF"), as indicated below, on January 17, 2017.

| | | |
|---|---|---|
| ☒ | CM/ECF | ***Attorneys for Plaintiffs*** |
| ☐ | Facsimile/___ Pages | Sean Morales-Doyle |
| ☐ | Federal Express | Despres, Schwartz & Geoghegan, Ltd. |
| ☐ | U.S. Mail | 77 West Washington Street, Suite 711 |
| ☐ | Electronic Mail | Chicago, Illinois 60602 |
| ☐ | Messenger | (312) 372-2511 |

By:     */s/* Stephen H. Pugh_____
Stephen H. Pugh

17